MIRES, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 15, 1908.

1. COMMON CARRIERS: Contract Limiting Liability: Reduced Valuation: Consideration: A shipping contract supported by a sufficient consideration limiting the common law liability of the carrier to an agreed valuation will be sustained by the courts; the usual consideration in such case is a reduced rate of freight.

Mires v. Railroad.

2. ——: ——: ——: ——. Where a contract of affreightment restricts the common law liability of the carrier and recites that such limitation is in consideration of reduced rate of freight and such recital is not controverted by other competent evidence, this is prima-facie evidence of such consideration sufficient to support a judgment.

3. ——: ——: ——: ——. A shipper signed an application for a contract for the shipment of a number of jacks, reciting that they were valued at one hundred dollars per head and that they were received at a reduced freight rate, and in case of loss he would make no claim in excess of such valuation, and such application further stated that the company had two rates on live stock and that the shipper should take notice that the rates of freight and the extent of the liability of the company were governed by the valuation which the shipper placed thereon. There was no evidence of fraud or imposition in inducing the shipper's signature to the application, and he is presumed to know its contents. In an action for the loss of a portion of the animals, he could only recover in the amount of one hundred dollars for each one lost.

4. ——: ——: ——: ——: Evidence. In such case the testimony of the plaintiff that he did not know the company had two rates of freight and had not read the application before signing it, was incompetent, and if competent could not overthrow the prima-facie case made out by the recitals in the application.

5. ——: Schedule of Rates: Interstate Commerce. A shipment from Mountain Grove, Missouri, to Kansas City, Missouri, on a railroad which ran part of the way through Kansas was an interstate shipment and the rates for such shipment were to be determined by the tariff sheets published by the Interstate Commerce Commission.

6. ——: ——: ——: Posting Tariff Rates. Where a railroad company has promulgated its rates under the Interstate Commerce Law and has complied with the statute by filing a copy of the same with the commissioners, depositing a copy with its agent and posting copies in two conspicuous places in the depot, shippers are presumed to know the rates thus published.

7. ——: ——: ——: ——. While a shipper in such case is not charged with constructive notice of the rates contained in the tariff sheets unless they have been posted in the depot, nevertheless where his application for a contract of shipment recites that the rates were on file and would be shown by the agent upon application, he is charged with such notice and is charged with notice that there are two rates if such is the fact.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED *(with directions).*

*Clark Dooley* and *Sherwood & Young* for respondent.

*W. F. Evans* and *W. J. Orr* for appellant.

NORTONI, J.—In this action, plaintiff seeks to recover the value of seven jacks lost through the negligence of defendant while being transported by it in the capacity of common carrier. The plaintiff recovered and defendant appeals. The defendant undertook to carry the animals from Mountain Grove, Missouri, over its lines, partially through the State of Kansas, to Kansas City, Missouri, and there safely deliver the same to a connecting carrier for transportation to Oaksdale, in the State of Washington. There were fifteen jacks and one horse in the shipment. The evidence tended to prove that, through the negligence of defendant, fire was communicated to and ignited certain combustible material used for bedding in the car containing the animals. The fire consumed the car and resulted in the destruction of seven of the jacks. Plaintiff sues for the value of the seven jacks destroyed, which is alleged to be $3,500. The jury returned a verdict for that amount.

There are numerous errors prejudicial to the defendant in the record. The court submitted the issues on inconsistent theories and materially invaded the rights of defendant in the admission of testimony and instructions given. To notice separately each of the just grounds for complaint on appeal would prolong the opinion to an unpardonable extent. By treating solely with the material facts established beyond con-

troversy, the case may be properly disposed of without a separate discussion of the several errors appearing.

It appears plaintiff had been engaged for thirty years in shipping stock over the railroads. He testified that during those years he had probably read as many as one hundred live stock contracts under which he shipped. On the date of the shipment in question, February 25, 1905, having loaded the animals in the car, plaintiff applied to defendant's agent at Mountain Grove to enter into a contract with him for their transportation to Kansas City. Immediately preceding defendant's printed form of live stock contract and on the same sheet of paper therewith, the defendant has prepared a printed application for the use of its prospective patrons who desire to avail themselves of a lesser or reduced rate of freight in consideration of surrendering certain common law rights against the carrier. Upon plaintiff proposing a contract with defendant covering the shipment involved, defendant's agent prepared the application referred to by filling in the blanks thereof and the plaintiff executed the same by affixing his signature thereto. Completed, it appears as follows:

Mires v. Railroad.

## ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY.

Read This Contract Carefully, as Numerous Changes Have Been made.

### NOTICE.

### THIS COMPANY HAS TWO RATES ON LIVE STOCK.

Shippers of Live Stock will take notice that rates of freight, and the extent of liability of the Company, are governed by the valuation which they place thereon.

Rates of freight are on file and will be shown by Agent on Application.

**To the ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY:**

The undersigned offers for shipment over your road...............15........head of........JACKS.........
from.......MOUNTAIN GROVE........to.........KANSAS CITY.........each head of the estimated weight of.........pounds, and valued at........ONE HUNDRED........Dollars......per........HEAD
.........and........one........head of.........HORSE.......from..........MOUNTAIN GROVE to
.......KANSAS CITY.........Dollars per.......HEAD........each head of the estimated weight of.........pounds, and valued at.......
ONE HUNDRED.........which valuation is named by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that in case of loss or damage to same said valuation so named shall be conclusive, should I make any claim for such loss or damage against any carrier over whose line the same may pass.

This application is an election on my part to avail myself of a reduced rate, by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations.

WITNESS:

.........................................G. T. MIRES...........
Owner or shipper.

The St. Louis and San Francisco Railroad Company accepts this shipment and the above valuation as a basis for fixing the rate of freight thereon.

ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY,

By.....J. H. LIVINGSTON.....Agent.

**NOTE.**—The rates of freight on Live Stock are fixed in view of the nature and extent of liability, assumed by the carrier, and all kinds of live stock shipped in car loads under a contract similar to the following, limiting the liability of the carrier, are taken at reduced rates; all kinds of live stock will be taken at carrier's risk if the shipper so elects, at rates provided by the existing tariffs, classifications, and under the provisions and conditions relating thereto; and in either event no agent of this Company has any power to bind it in any way, with regard to the shipment of live stock, except by written contract.

Defendant's agent having accepted plaintiff's proposition as indicated on the application, proceeded to enter into a written contract with him providing for shipment of the animals mentioned from Mountain Grove to Kansas City, Missouri. The consideration mentioned is $46.20 freight charges, which amount is recited in the contract to be a "special rate and less than the rate charged for shipments transported at the carrier's risk; in consideration of which reduced rate it is mutually agreed between the parties as follows," etc. The tenth stipulation of the contract recites that it is agreed the defendant shall not be liable in case of the total loss of stock for an amount in excess of the agreed value stated in the shipper's application annexed to and made parcel of the contract, and that the value named in such application shall be conclusive upon the parties to the contract. The contract containing the stipulation referred to was signed by plaintiff and by the defendant, through its agent. The defendant concedes its liability to the amount of $100 per head on each of the jacks mentioned but invokes the stipulation of the contract limiting its liability, against plaintiff's right to recover an amount beyond the agreed value. Defendant asserts that it had two rates of freight on such animals. Under the higher rate, the transportation would be had at the carrier's risk with full common law liability annexed; while under the second or lesser rate, transportation would be furnished under the release or agreed valuation contract only, such as involved in this case. It asserts that defendant chose the latter of the two rates and therefore entered into a valid contract with it, forgiving in part defendant's common law liability in that behalf. In reply to this, the plaintiff pleads that the special contract with respect to the agreed valuation of the animals was entirely without consideration and therefore void and of no effect.

While it is true the policy of the law forbids a common carrier from contracting for exemption from liability on account of the negligence of it or its servants in transporting property, it is well settled that a contract supported by a sufficient consideration limiting the common law liability of the carrier to an agreed valuation, will be sustained. The usual consideration in such cases is a reduced rate of freight. It is said to be entirely proper for the carrier and shipper to agree upon such valuation and adjust the amount for which the carrier should respond with reference to the rate charged for carriage. [Harvey v. Railway Co., 74 Mo. 538; Hart v. Railway Co., 112 U. S. 331; Snider v. Adams Ex. Co., 63 Mo. 376; Ketchum v. Express Co., 52 Mo. 390; M'cFadden v. Railway Co., 92 Mo. 343; Railway v. Cleary, 77 Mo. 638; O'Bryan v. Kinney, 74 Mo. 125; Duvenick v. Railway, 57 Mo. App. 550; Cau v. Railway, 194 U. S. 427; Rogan v. Railroad, 51 Mo. App. 665; Conover v. Pacific Ex. Co., 40 Mo. App. 31; 5 Am. and Eng. Ency. Law (2 Ed.), 298 et seq.] Nothing appearing to the contrary, it is generally true that a contract purports validity on its face, and therefore a valid consideration. This rule obtains in numerous jurisdictions in respect of contracts for the shipment of live stock. [Railway v. Railway, 3 Wall. (U. S.) 107; McMillan v. Railway, 16 Mich. 79; Railway v. Oden, 80 Ala. 38; Railroad v. Lesser, 46 Ark. 236; Sprague v. Railroad, 34 Kan. 347; 5 Am. and Eng. Ency. Law (2 Ed.), 300; 4 Elliott on Railroads, sec. 1504.] However this may be, the rule seems to be established in this State to the effect that unless it appears from a recital in the contract or other competent evidence, that a reduced rate of freight was in fact given, limitations on the carrier's liability therein contained will be declared of no effect. [Phœnix Power Mill Co. v. Railroad, 101 Mo. App. 444, 196 Mo. 663, 94 S. W. 235; s. c., 120

134 App—25

Mo. App. 566; Kellerman v. Railway, 136 Mo. App. 177; Duvenick v. Railway, 57 Mo. App. 550.] And parol evidence is admissible to establish the true consideration or to explain or contradict recitals of the contract touching the same. [McFadden v. Railroad, 92 Mo. 343; Kellerman v. Railway, 136 Mo. 177.] In the absence of fraud or imposition, a patron of a railroad, like other men, is bound by the contract he executes. It is for him to examine and ascertain its text before affixing his signature. After that, he is presumed to know the contents of the contract executed by him, and is bound prima facie at least, by the recitals of fact against his interest contained therein. Where the contract recites the consideration to be a reduced rate of freight, and this recital is not controverted or overthrown by other competent evidence, the contract recital to that effect is declared to be prima-facie evidence of the fact and sufficient to support a judgment thereon affirming the limited liability of the carrier. [Railway v. Cleary, 77 Mo. 634; McFadden v. Railway, 92 Mo. 343; O'Bryan v. Kinney, 74 Mo. 125; Wyrick v. Railroad, 74 Mo. App. 406; Cau v. Railway, 194 U. S. 427.] It appears in the case now under consideration that while affixing his signature to the application for the contract with respect to the shipment, plaintiff was confronted with the following warning in letters of bold type: "This company has two rates on live stock. Shippers of live stock will take notice that rates of freight and the extent of the liability of the company are governed by the valuation which they place thereon. Rates of freight are on file and will be shown by the agent on application." In the application, he fixed an agreed valuation on the animals and recited his desire to obtain a contract for their transportation based upon the valuation so named; this, for the purpose of securing a reduced rate of freight on the shipment which he preferred instead of

shipping the same at a higher rate without limitations on the carrier's liability. The record is devoid of an effort to prove that the plaintiff was induced to sign this application or the contract through fraud or that he was imposed upon. If, in the absence of fraud or imposition, he is presumed to know the contents of the instrument executed by him touching the shipment, the facts recited present a clear and positive case of the shipper exercising his option and opportunity to choose the lessor of two rates, and as a consideration therefor, forgive a portion of the carrier's common law liabilities. [Cau v. Railway, 194 U. S. 427; 5 Am. and Eng. Ency. Law (2 Ed.), 298.] Aside from the recitals in the application mentioned, the contract itself recites the rate of freight, $46.20, to be a special and reduced rate of freight and less than the rate charged for shipments transported at the carrier's risk; and it is said, in consideration thereof, the shipper agrees to the limitations contained in the contract. This of itself is sufficient to establish prima-facie that a reduced rate of freight was given and therefore a valid consideration for the contract exists. Although plaintiff testified and his evidence was received over the objection and exception of defendant to the effect that he did not know the company had two rates of freight and had not read the application and contract before signing, his evidence wholly fails, and in fact he made no effort to prove, that the defendant did not in fact have in force two rates, of which he chose the lesser. His evidence goes only to the effect that he did not know the company had any rate other than that given for the shipment. Even if this evidence were competent, and it was not, in a case such as this, where no fraud or imposition is either pleaded or proven, it would be entirely insufficient to overthrow the prima-facie case made by the recitals contained in the application and contract to the effect that the company had two rates of freight

and that the plaintiff exercised his option and opportunity by choosing the lesser. Aside from the prima-facie proof involved in the recital of a reduced rate of freight in the contract, the defendant proved beyond controversy by the introduction of its tariff sheets in evidence, that it actually had in force at the time, two rates of freight. It appears from the tariff sheets that the rate from Mountain Grove. to Kansas. City, on a thirty-four-foot car, such as that employed in this shipment, laden with horses and mules, was $46.20, when the shipment was made under an agreed valuation and limited liability contract, as in the present instance. This was the lesser of the two rates referred to. The tariff sheets provided that 110 per cent of the rate last named should be charged on shipments made without limitation on the carrier's liability at common law. This, then, is the higher of the two rates. By its payment, there is afforded to the shipper the full common law liability of the carrier as insurer of his stock while in transit. By a competent provision to be found on page fourteen of the tariff sheets, the rates named on horses and mules are made to apply on jacks as well. From this it appears wholly independent of the recital in the contract to that effect, to be conclusively established that the plaintiff actually received the benefit of the lesser of the two rates, and this afforded an ample and sufficient consideration for the limited liability contract.

Although the point of shipment and the point of delivery to the connecting carrier mentioned in the contract; that is, both Mountain Grove and Kansas City, are in the State of Missouri, defendant's road for some distance between these two points passes through the State of Kansas, and therefore the contract of carriage and the shipment thereunder was interstate rather than domestic. The propostion has been pointedly determined by the Supreme Court of

the United States in Hanley v. Railway, 137 U. S. 617. This being true, the defendant's rate for carriage of jacks between the points mentioned is of course to be determined by reference to its tariff sheets and schedule of rates published and on file with the interstate commerce commission. It. is established beyond controversy that the defendant had filed its tariff sheets and schedule of rates with the interstate commerce commission and had the same on deposit with its agent at its depot at Mountain Grove. It does not appear, however, that it had posted a copy of the same in two conspicuous places in its depot for the information of the public, as contemplated by the interstate commerce act. The evidence touching this feature of the case tends to prove that instead of posting the tariff sheets and schedule of rates in its depot, the defendant had posted a notice directing the attention of the public to the fact that such schedules and tariff sheets were on file with its agent and subject to inspection upon inquiry. Plaintiff bases an argument upon this proof to the effect that the defendant's rates were not in force for the reason it had failed to post copies thereof in the depot. It is urged the defendant had not established two rates on interstate shipments, and therefore the rate of $46.20 mentioned in the contract was the only rate which obtained with respect to the shipment in controversy. The case of Railroad v. Sloop, 200 Mo. 198, is relied upon to sustain the proposition thus advanced. In this connection the proposition may be asserted that where the carrier has promulgated its rates under the interstate commerce law and complied with the statute by filing a copy of the same with the commission, deposited a copy thereof with its agent, and posted copies in two conspicuous places in its depot, shippers are presumed to know the existence of the schedules for the reason the rates are established by authority and in execution of the law, and are open

to public inspection. That is, in such circumstances the shipper is chargeable with constructive knowledge of the rates provided in the tariff sheets and schedules posted. [Gerber v. Railroad, 63 Mo. App. 145.] In Railroad v. Sloop, supra, relied upon by plaintiff, the railroad company, plaintiff, had failed · to post its schedules and tariff sheets, identically as in this case. Its agent having contracted with and shipped for Sloop a lot of timothy seed at sixteen cents per bushel, through mistake, when the tariff rate thereon was twenty-six cents, the railroad company prosecuted the action against Sloop to recover the difference between sixteen and twenty-six cents per bushel freight on the seed. It predicated its action and relied upon the proposition that Sloop was presumed to know, or in other words, was constructively charged with knowledge, of the twenty-six cents per bushel rate promulgated in its tariff sheets. It appearing from the evidence that the railroad company had failed to post its schedules and tariff sheets in the depot, the Supreme Court decided that Sloop was not chargeable with constructive notice thereof. The sum and substance of the ruling in that case is to the effect that in the absence of actual notice of the rates, the shipper is not chargeable with notice thereof unless the tariff sheets and schedules are posted in the depot in accordance with the statute. That is to say, the shipper is not chargeable with constructive notice of the rates contained in the tariff sheets unless those rates have been posted in the depot in accordance with the obvious intention of the statute to give notice thereof to the public generally. [See Railroad v. Sloop, 200 Mo. 198, 210, 211.] Conceding such to be the law, the mere fact that the defendant failed to post the schedules and tariff sheets does not necessarily render nugatory the rates promulgated and filed with the interstate commerce commission and deposited with the station agent. That result alone would relieve

plaintiff's situation in the present controversy, for if the two rates were valid in this case, it appears from the contract and his application that he had actual notice of their existence. The Supreme Court of the United States which is an authority superior to all others on the interpretation of a federal statute, in the case of Railway v. Cisco Oil Mill, 204 U. S. 449, has recently declared that the requirement of the interstate commerce statute to the effect that the schedules and tariff sheets shall be "posted in two public and conspicuous places in every depot," etc., is not a condition precedent to the establishment and placing in force of the tariff rates. It is said that such provision contemplates the existence of an established rate and has for its object only the matter of affording special facilities to the public for ascertaining the rates actually in force. The rates are valid even though not posted. It therefore appears that even though the defendant's schedules and tariff sheets were not posted in the depot so as to charge plaintiff with constructive knowledge of their contents, the rates were nevertheless valid and actually in force at the time the shipment was made. However all of this may be, it appearing the rate was valid and in force, the matter of constructive knowledge is entirely beside the case for the reason plaintiff's application for and the contract of shipment itself, recited that he had actual knowledge of the two rates. Further, it is obvious he exercised his option and opportunity by choosing to release a portion of defendant's common law liability in consideration of payment on his part of the lesser or reduced rate of freight, whereas he might have shipped under the higher rate and held defendant to the full measure of its common law liability as an insurer.

The judgment will be reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff in accord with the agreed valua-

tion in the contract of affreightment; to-wit, for $700, with six per cent interest from the date of filing the suit. It is so ordered. *Bland, P. J., and Goode, J.,* concur.