PACIFIC EXPRESS CO. v. RUDMAN.†

(Court of Civil Appeals of Texas. Texarkana. Feb. 8, 1912. Rehearing Denied March 7, 1912.)

1. TRIAL (§ 349*)—SPECIAL VERDICT—INSTRUCTIONS.

Where a case was entitled to go to a jury on special issues, an instruction that, if the jury found for plaintiff, they could in no event find for a greater sum than $81 was properly refused, as in effect requiring the jury to find a general verdict.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 349.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

**2. TRIAL (§ 350*)—SPECIAL INTERROGATORIES —DISPUTE IN TESTIMONY.**

Where a case was submitted to a jury on special issues, it was not reversible error to submit a question for answer as to which there was no dispute in the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

**3. JUDGMENT (§ 199*)—SPECIAL INTERROGATORIES.**

Where a case was submitted on special issues, and the jury found that plaintiff had been damaged in a much greater sum than $81, and that there had been no contract limiting the amount of defendant's liability, the court did not err in overruling a motion, contrary to such verdict, that judgment be rendered for plaintiff for a sum not more than $81.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 367–375; Dec. Dig. § 199.*]

**4. CARRIERS (§ 165*)—EXPRESS SHIPMENT— BILL OF LADING—FINDINGS.**

In an action for damage to furs shipped by express, evidence *held* to warrant findings that the shipper's agent was not asked by the agent of the carrier to value the goods, and that no contract limiting the carrier's liability to a specified sum in case of loss had been made.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 165.*]

**5. CARRIERS (§ 163*)—EXPRESS COMPANIES— CARRIER'S LIABILITY—LIMITATION.**

A special contract limiting a carrier's liability will not be presumed from mere inference, custom, or failure to object; but an express contract must be shown.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 722–725; Dec. Dig. § 163.*]

**6. CARRIERS (§ 151*)—DAMAGE TO GOODS— EXPRESS SHIPMENT—RATES.**

In the absence of an express contract limiting a carrier's liability, the owner would not be denied a recovery for the full value of the loss, because the carrier did not charge the full rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–690; Dec. Dig. § 151.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by I. Rudman against the Pacific Express Company. Judgment for plaintiff, and defendant appeals. Affirmed.

. The appellee sued to recover damages for injury by fire to a collection of mink furs, alleged to have been caused through the negligence of the appellant company while being transported by it from St. Louis, Mo., to Bonham, Tex. The appellant answered by general denial, and specially answered that the appellee, through his agent, contracted with appellant company that it would not be held liable or responsible for any loss or damage beyond the sum of $50, and that the appellee, through his agent, delivered the furs to appellant for transportation, representing that same were of the value not to exceed $50, and that appellant accepted and transported them and charged for such services upon such representation. The appellee filed a supplemental petition, denying, under oath, that the contract alleged by appellant was executed by him or by his authority, and alleging that the original contract of shipment was a verbal contract to transport the furs at customary and legal charges, the amount to be arrived at and assessed at point of destination; and that if any contract existed, as alleged by appellant, limiting liability to any amount, same was procured by fraud, concealment, and misrepresentation of appellant, and made after appellant had accepted the furs for shipment, and was never ratified by appellee.

The case was submitted to the jury on special issues, and after the verdict appellant moved the court to enter judgment in favor of appellee for $50, and, in the event this should be denied, to enter judgment in favor of appellee for $86.66. The court overruled the appellant's motion to enter judgment, and granted the appellee's motion to enter judgment on the findings of the jury in the sum of $1,226.80 and interest. The jury answered the questions in respect thereto that the furs were damaged by being burned or scorched while in the possession of appellant and being transported from St. Louis to Bonham, and that such damage was caused by the negligence of appellant, and that the difference in the value of the furs before and after injury was $1,226.80. The jury further answered the questions in respect thereto that the agent of appellee at the point of shipment was not asked by the agent of the appellant for valuation on the shipment, and the agent of appellee did not refuse to give a valuation, and the appellant's agent did not agree with appellee that the shipment should be carried in accordance with or subject to the provisions of the printed receipt in evidence, and that the alleged bill of lading set out in appellant's answer was delivered after appellant had accepted the furs for shipment, and not as a contract of shipment, and that neither the agent of appellee nor the appellee made a contract, agreeing to limit the liability of appellant to an agreed valuation in the event of loss or damage.

James L. Minnis and Head, Smith, Hare & Head, for appellant. J. G. McGrady and Cunningham & McMahon, for appellee.

LEVY, J. (after stating the facts as above). [1] By the first assignment, the appellant contends that the court erred in not giving to the jury the following special charge: "If you find for plaintiff, you are instructed that in no event can you find for a greater sum than $81." That a case was submitted to the jury upon special issues, and not upon an instruction, the effect of which was to request the return of a general verdict, would not justify a reversal of the judgment. A case which is entitled to go to the jury on special issues under the statutes, as here, does not permit of a general verdict for either the plain-

tiff or defendant. The assignment is overruled.

[2] The second, third, fourth, fifth, sixth, seventh, and eighth assignments predicate error upon the action of the court in propounding to the jury for answer questions Nos. 6, 7, 8, 9, 10, a, b, set out in these assignments. The precise point made for error is that it is improper for the court to submit to the jury a question for answer over which there is no dispute in the testimony. Assuming, for the moment, that the evidence, conclusively established the answers to be made to the several questions in these assignments, yet, by authorizing the jury to make the finding, it is not perceived that reversible error is thereby shown. Findings on special issues are unlike a general verdict. As to whether the answers as made by the jury were contrary to the evidence becomes another question, not within the scope of the present assignments. The assignments are overruled.

[3] The ninth assignment complains of the refusal of the court to enter judgment as requested in the second motion of appellant there set out. After the verdict of the jury, the appellant filed two motions to enter judgment in its favor. The court overruled both motions and entered judgment for appellee. It is the second motion that is here made the basis of assignment for error. This motion in effect claims that appellee made a contract of agreed valuation in the event of loss or damage through negligence in shipment, and that he was entitled to recover no more than the agreed valuation. The point presented as being the error in overruling the motion is that the undisputed evidence shows that the appellee was not in any event entitled to recover exceeding the agreed sum of $81. If the findings made by the jury were true, and they were not set aside by the court as unsupported by evidence, that appellee was damaged a much greater value than $81 through the negligence of the appellant, and that neither appellee nor his agent made any agreement, either express or implied, that appellant should not be liable for such amount of loss, then appellant was not entitled to have his second motion granted. The court could not enter judgment in conflict with the verdict of the jury. Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Scott v. Bank, 66 S. W. 485.

[4] Assignments Nos. 10 to 16, inclusive, assail certain findings made by the jury, upon the ground of being unsupported by the evidence. Assignments Nos. 10 and 11 assail the answers of the jury in response to the questions propounded that F. C. Taylor & Co., agent of the appellee in the shipment in question, were not asked by appellant for a valuation on the shipment, and that they did not refuse to give such valuation. The bill of lading relied on by appellant as evidencing the contract of valuation on its face states in words, "Value asked and not given." The agent of appellant on whose testimony it relies for proof of the alleged special contract of valuation admits that he did not ask of Taylor & Co. the value of the shipment, and that he himself, without asking the value, "just stamped in the words 'Value asked and not given.' " There is ample evidence to support the finding of the jury complained of; therefore these assignments are overruled.

The twelfth assignment is based on the following question: "Were the written provisions of the alleged bill of lading in question as set out in defendant's answer reasonable?" to which the jury answered, "No." The thirteenth assignment is based on the following question: "Were such provisions supported by valuable consideration?" to which the jury answered, "No." Rather did each of these questions call for a conclusion of law. That they were submitted to the jury at all cannot be said to be ground for reversible error, because it was an immaterial finding, and unimportant in support of the judgment as rendered by the court, in view of the further finding that there was no agreement to limit liability to an agreed valuation, and that the alleged bill of lading was not the shipping contract. This latter finding supports the judgment, and was a material finding; and the answers to these two questions submitted are immaterial and not influencing; and hence no harm can be said to have been done appellant.

The fourteenth assignment is based on the following question: "Did F. C. Taylor & Co. agree that the shipment in question should be carried by defendant in accordance with or subject to the printed provisions of the alleged receipted bill of lading which has been read in evidence on behalf of defendant?" to which the jury answered, "No." According to the testimony of Pingree, of Taylor & Co., the shipment was turned over to appellant to be shipped to appellee, and the appellant accepted such shipment merely with the agreement and understanding that the charges for such service were to be collected on delivery at Bonham. Looking to another finding of the jury, which is not assailed, we take it to be a fact proven that the bill of lading in evidence was delivered to F. C. Taylor & Co. after the appellant had accepted the goods for shipment. If, as appears from further evidence, the contract of shipment was a verbal one of ordinary transportation upon the customary and legal charges to be assessed at the point of destination, and the bill of lading in evidence was made out and delivered after the contract of shipment and was not intended as the contract of carriage, we would not be warranted in holding that the answer of the jury without any evidence to support it.

Neither do we feel warranted in holding that the answers made by the jury, and set out in the fifteenth and sixteenth assignments, were without any evidence to support

them. The formal part of the document relied on by appellant, and to which it claims Taylor & Co., for the appellee, agreed, so far as set out in the record, reads:

**The Pacific Express Company.**

**Non-Negotiable Bill of Lading.**

**Read This Bill of Lading.**

Received from F. C. Taylor & Co.

Which This Company Undertakes To Carry, But Not Beyond Its Own Lines, Subject To The Following Conditions, And Which Conditions Are Agreed To By The Shipper Or Owner In Accepting This Receipt.

5. It is further agreed that this company is not to be held liable or responsible for any loss of, or damage to, said property or any part thereof from any cause whatever, unless in every case the said loss or damage be proved to have occurred from the fraud or gross negligence of said company or its servants; nor in any event shall this company be held liable or responsible, nor shall any claim be made upon it beyond the sum of Fifty Dollars, unless the just and true value thereof is stated herein, and an extra charge is paid or agreed to be paid therefor, based upon such higher value, nor upon any property or thing unless properly packed and secured for transportation; nor upon any fragile fabrics, or any fabrics consisting of, or contained in, glass.

| Date, 190—. | Articles. | Value. | Consignee. | Destination. | Receipted by. |
|---|---|---|---|---|---|
| 1/11/10 | 1 Bbl. Furs 2 Att. | C. O. D. Value asked and not given. | Rudman Produce Co., Bonham, Texas. | | Hagan (2 Att.) |

Assuming for the moment, that this document was the shipping contract between the parties, it cannot be said to show on its face an agreement between the shipper and carrier as to the actual value of the goods shipped. Rather does it indicate the want of any agreement of valuation of the goods shipped on the part of the shipper. Treating the question as triable by Missouri laws, it is not at all similar to the agreement in the cited cases of Mires v. Railway Co., 134 Mo. App. 379, 114 S. W. 1052, and Dry Goods Co. v. Express Co., 133 Mo. App. 683, 113 S. W. 1161. In this first case, the valuation agreement was signed by the shipper, and on its face expressly stated that the 15 jacks were "valued at $100.00 per head, which valuation was made by me for the purpose of securing a reduced rate of freight on this shipment; and I agree that in case of loss or damage to same said valuation `so named shall be conclusive." In the second case, the court made distinguishment between the shipping agreement there and the one in the case of Shutte v. Weir, 59 Misc. Rep. 438, 111 N. Y. Supp. 240, upon the ground that the contract there did fix the value; while in the Shutte Case no stipulation of value was made. The shipping contract there that was said by the court to contain an agreement of valuation recited, "nor shall any demand be made upon them beyond the

sum of $50.00, *at which sum said property is hereby valued.*" The Shutte Case, supra, in some respects is similar to the instant case. Appellant, for proof of the alleged special contract, relied upon the testimony of its agent, Hannigan. The witness was not in the record an impartial witness, and his testimony was not without conflicting statements, and there is nothing in the record to corroborate him. It was the province of the jury to disregard his testimony. And, if this witness' testimony should have been taken as true in the trial, it does not conclusively show the existence of the contract alleged. He does not claim to have had any express agreement with Taylor & Co. He relied on a habit or custom of dealing he had with that firm generally in shipping goods. His statement as to what Taylor & Co. understood by this particular shipment is his conclusion merely. He says he saw that the goods were furs, and that furs are a valuable shipment; yet he admits that he did not ask the value, and that Taylor & Co. did not state the value, nor refuse to state it, and that the statement in the alleged special contract, "Value asked and not given," was of his own making.

[5] It is generally held that a special contract limiting the carrier's liability will not be presumed from mere inference, custom, or failure to object; but an express contract must be shown to have been entered into. Nav. Co. v. Bank, 6 How. 344, 12 L. Ed. 465; The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039; Railway Co. v. Manufacturing Co., 16 Wall. 318, 21 L. Ed. 297; Cau v. Railway Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1053; Hooker v. Railway Co., 209 Mass. 598, 95 N. E. 945. If appellee, therefore, did not, as found by the jury, make any agreement of valuation, but shipped the goods upon a contract of ordinary shipment, with the customary and legal charges to be arrived at and assessed at point of destination, it follows under the facts here that he would be entitled to recover the full value of loss; negligence of the appellant causing the loss being shown.

[6] It further follows that under such contract so made appellee would not be denied a recovery for the full value of the loss, upon the ground that the appellant failed to or did not charge the full rate at point of destination that it was entitled to ask. Such result should be upon the ground that no agreement of valuation was made, and no special rate lower than the full legal rate fixed in the shipment. Appellant agreeing to assess and charge the customary and legal rate at point of delivery, it could have demanded and collected, before delivery, as was its duty, the legal rate therefor. This was its right and remedy under the contract so made here, not being in the record misled by any fraud or undervaluation on the

part of appellee. Appellee could not have legally refused to pay the proper legal rate, if it had been demanded at point of destination, because the legal rate required by law to be collected. Therefore assignments Nos. 12 to 16, inclusive, are overruled.

The judgment is ordered affirmed.