W. H. STUBBLEFIELD, JR., Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 7, 1916.

1. COMMON CARRIERS: Interstate Commerce: Supremacy of Federal Laws. Congress having, through the enactment of the Interstate Commerce Act (Act February 4, 1887, ch. 104, 34 Stat. at Large, p. 379) and its amendments, including the Carmack Amendment (Act June 29, 1906, 34 Stat. at Large, p. 584), manifested its purpose to take possession of the subject of the liability of carriers by railroad on account of interstate shipments and especially bills of lading and shipping contracts, such legislation and the decisions of the Supreme Court of the United States expounding it supersede all State regulations and rules of decision on the subject.

2. ————: ————: ————: Construction of Carmack Amendment. The provision of the Carmack Amendment, that the holder of any bill of lading issued for interstate carriage shall not be deprived of any right of action or remedy he had under the existing laws, refers only to existing Federal laws.

3. ————: ———— :————: Pleading. In an action against a carrier for negligence in transporting an interstate shipment, the

carrier may invoke the provisions of the Interstate Commerce Act without pleading it in the answer, since that Act displaces the State laws on the subject and affords the sole rule of decision.

4. ———: ———: ———: Limitation of Carrier's Liability: Instructions. Under the Interstate Commerce Act, an interstate carrier may file two rates, one a regular rate in which its common-law liability is preserved, and the other a lesser rate based on an agreed valuation of the shipment, but such rates must be open to the public; and hence, in an action against a carrier for negligence in transporting an interstate shipment, where the carrier claimed that two such rates were filed and relied on a limitation of liability in the bill of lading, claiming the lesser rate was charged, an instruction requiring the jury to find, as a condition precedent to the limitation, that plaintiff received service at a less rate than other persons, was erroneous, as imposing a condition contrary to law, and was erroneous also as not supported by the evidence.

5. PRINCIPAL AND AGENT: Contract Executed by Agent: Conclusiveness on Principal. In the absence of evidence of fraud or deceit practiced on an agent in negotiating a written contract, the principal is bound by such contract, regardless of whether or not the agent had knowledge of its provisions, for the law devolves upon the agent the duty of reading the contract and ascertaining its contents, before affixing his signature to it.

6. COMMON CARRIERS: Recitals in Contract: Evidence. The recital of a reduced rate in a contract of affreightment is prima-facie evidence of such fact.

Appeal from Cape Girardeau Circuit Court.— *Hon. Charles B. Faris,* Judge.

REVERSED AND REMANDED (*with directions.*)

*W. F. Evans, Moses Whybark* and *A. P. Stewart,* for appellant.

(1) Congress, by the enactment of the Interstate Commerce Act, and the amendments thereto, has taken complete possession of the subject of liability of carriers by railroad on account of interstate shipments; and all State regulations, provisions and policies with respect to that subject are thereby superseded and invalidated. Act Feb. 4, 1887; 24 Stat. at Large, 379: Act June 29, 1906; 34 Stat. at Large, 584; Adams Exp. Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314;

Chicago, etc. Ry. v. Latta, 226 U. S. 519, 57 L. Ed. 328; Chicago, etc. Ry. v. Miller, 226 U. S. 513, 57 L. Ed. 323; Kansas City, etc. Ry. v. Carl, 227 U. S. 639, 57 L. Ed. 683; Missouri etc. R. Co. v. Harriman Bros., 337 U. S. 657, 57 L. Ed. 690; Amer. Sil. Mfg. Co. v. Railroad, 174 Mo. App. 184, 156 S. W. 830; Joseph v. Railroad, 175 Mo. App. 18, 157 S. W. 837; McElvain v. Railroad, 176 Mo. App. 379, 158 S.W. 464; State v. Railroad, 212 Mo. 681, 683; State v. Railroad, 238 Mo. 32-33; Rich v. Railroad, 166 Mo. App. 389-390; Railroad v. Cramer, 232 U. S. 490; Railroad v. Hooker, 233 U. S. 97; Railroad v. Robinson, 233 U. S. 173; Robinson v. Railroad, 169 S. W. 831; Mondou v. Railroad, 223 U. S. 1; 56 L. Ed. 327. (2) The contract of shipment, made by plaintiff's agent with the Wabash Railroad Company, limiting the liability of the carrier in case of loss or damage, in consideration of a reduced rate of freight, was valid. Hart v. Railroad, 112 U. S. 331, 28 L. Ed. 717; Cau v. Railroad, 194 U. S. 427, 48 L. Ed. 1053; Adams Exp. Co. v. Croninger, 226 U. S. 491; Railroad v. Latta, 226 U. S. 519; Railroad v. Miller, 226 U. S. 513; Railroad v. Carl, 227 U. S. 639; Railroad v. Harriman Bros., 227 U. S. 657; Mires v. Railroad, 134 Mo. App. 385 and cases cited; Clegg v. Railroad, 122 C. C. A. 273, 203 Fed. 971; Railroad v. Mixan, etc., Co., 154 S. W. 205. (3) Defendant, as connecting carrier, was entitled to the benefit of the provisions of said shipping contract made with the Wabash as the initial carrier. Railroad v. Carl, 227 U. S. 639. (4) The court erred in admitting evidence of the value of the animal sued for in excess of the value of $100 limited in the contract of shipment. Hart v. Railroad, 112 U. S. 331, 28 L. Ed. 717; Railroad v. Harriman Bros., 227 U. S. 657, 57 L. Ed. 690; Wells Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, 57 L. Ed. 600; Railroad v. Cramer, 232 U. S. 490; Railroad v. O'Connor, 232 U. S. 508; Railroad v. Hooker, 233 U. S. 97. (5) Plaintiff's agent, Rash, had authority to enter into the contract of shipment with the Wabash Railroad Co. Plaintiff

is bound by said contract, and the court erred in refusing to give instruction No. 1 requested by defendant. McElvain v. Railroad, 151 Mo. App. 141; Same v. Same, 176 Mo. App. 379, 158 S. W. 465; Darnell v. Lafferty, 113 Mo. App. 292. (6) The court erred in giving instruction No. 2 on behalf of plaintiff. Sec. 2, Act to Regulate Commerce, 24 Stat. at Large, 379; Sec. 3, Act to Regulate Commerce, 24 Stat. at Large, 379; Act Feb. 19, 1903, 32 Stat. at Large, 847; Railroad v. Kirby, 225 U. S. 155, 56 L. Ed. 1033; Clegg v. Railroad, 122 C. C. A. 273; Armour Pkg. Co. v. United States, 209 U. S. 56, 52 L. Ed. 681, 691; Cau v. Railroad, 194 U. S. 427, 48 L. Ed. 1053, 1056; Railroad v. Carl, 227 U. S. 639; Railroad v. Harriman Bros., 227 U. S. 657. (7) The court erred in giving instruction No. 5 on behalf of plaintiff. Railroad v. Carl, 227 U. S. 639; Railroad v. Harriman Bros. 227 U. S. 657; Burgher v. Railroad, 139 Mo. App. 67; Mires v. Railroad, 134 Mo. App. 385; Railroad v. Robinson, 233 U. S. 173; Railroad v. Hooker, 233 U. S. 97; Wright v. Railroad, 167 S. W. 1137; Robinson v. Railroad, 169 U. S. 831. (8) Under the law and the evidence, the verdict of the jury is excessive.

*Oliver & Oliver* for respondent.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the negligence of defendant common carrier. Plaintiff recovered and defendant prosecutes the appeal.

It appears that plaintiff shipped a valuable race horse from Ft. Wayne, Indiana, to Oran, Missouri, over the Wabash railroad and subsequent connecting carriers. The evidence tends to prove that the horse was injured through defendant's negligence during the transportation over its road, so as to occasion his death. In his petition, plaintiff valued the horse at $7000, and prayed judgment for this amount. The jury awarded a recovery of $3500.

The answer incorporates a general denial, and then pleads a special contract entered into between plaintiff, by his agent Rash, on his part, and the Wabash Railroad Company, for the transportation of the horse from Ft. Wayne, Indiana, to Oran, Missouri. Among other things, the answer pleads that the Wabash Railroad Company had prepared and promulgated two different rates of freight in respect of such shipments, one with full common-law liability attached, and a lesser, or reduced, rate based on a valuation declared by the shipper; that, on receiving the shipment, plaintiff, through his agent, Rash, entered into a written contract with it, whereby he chose the lesser of the two rates, and declared the valuation of the horse to be $100, at which amount the right of recovery for its loss is limited in consideration of such reduced rate of freight.

By his reply, plaintiff denied that any reduced rate of freight was accorded him in the shipment.

The written contract of affreightment is in evidence, and it is admitted that it was executed by plaintiff's agent, Rash. It appears too from the tariffs in evidence, duly authenticated by the proper officer of the Interstate Commerce Commission, that the Wabash Railroad Company had established and promulgated and filed with the commission its rates of freight available to all persons for transportation in this character of shipments. One rate—that is, the higher rate—provided for the full common-law liability of the carrier, while the lesser rate reckons with the valuation declared by the shipper at the time of the shipment, and limits the valuation accordingly. It is clear that the shipment was made at the lesser of the two rates above mentioned, but notwithstanding the valuation of $100 declared on the horse in connection therewith, and the limitation in the contract to the right of recovery to that amount, the jury awarded plaintiff a recovery of $3500.

It is argued that this was error, because the shipment was interstate in character, and, in such circumstances, it is certain plaintiff may not recover an

amount greater than that limited in the contract of
shipment, for that the valuation and the limited amount
of recovery is indissolubly bound up in the rate paid.
Congress having manifested its purpose, through the
enactment of the Interstate Commerce Act, to take
possession of the subject of the liability of carriers
by railroad on account of interstate shipments, as
appears by reference to the Interstate Commerce Act
and its amendments, including that of June 29, 1906
(34 U. S. Stat. at Large, 584), and especially bills of
lading and shipping contracts, through what is known
as the Carmack Amendment, incorporated in section
20 of the Act, page 595, such legislation and the decis-
ions of the Supreme Court of the United States ex-
pounding it supersede all State regulations and rules
of decision on the subject. The Federal statute touch-
ing this matter and the decisions of the Supreme Court
of the United States construing them afford an exclu-
sive rule for the determination of the controversies
pertaining to the subject. This is true, too, notwith-
standing the provisions of the Carmack Amendment to
the effect that the enactment shall not deprive any
holder of a bill of lading of any remedy or right of
action that he had under the existing law, for this is
construed to refer alone to existing Federal law. [See
Adams' Express Co. v. Croninger, 226 U. S. 491;
Chicago, etc. Ry. v. Miller, 226 U. S. 513; Chicago,
etc. Ry. Co. v. Latta, 226 U. S. 519; American Silver
Mfg. Co. v. Wabash R. Co., 174 Mo. App. 184, 192,
156 S. W. 830.] There can be no doubt that, under
the rule of decision evolved in the Supreme Court of
the United States with respect to interstate shipments,
the right respecting the amount and value of the re-
covery in cases of this character is to be ascertained
and determined by reference to the rate at which the
shipment is made. [Authorities supra.]

But it is argued on the part of plaintiff that the
Interstate Commerce Law was not invoked here and,
therefore, the case is to be disposed of without regard
to it. The argument proceeds in the view that it is

194 M. A.—26

necessary for defendant to specially plead the Interstate Commerce Statute in its answer, but obviously such is not true, for if the shipment be interstate in character, then the Interstate Commerce Statutes displace all local law on the subject and afford the sole rule of decision. Although it is essential to plead in the answer the statutes of a foreign State, in order to invoke the rule they reflect, such is not true in respect of the laws of the United States touching the subject-matter of Interstate Commerce. The precise question has been pointedly determined by our Supreme Court, as will appear by reference to Wentz v. Chicago B. & Q. R. Co., 259 Mo. 450, 463, 464, 168 S. W. 1166.

In its answer defendant set forth the facts concerning the special contract of shipment, showing that two rates of freight were provided, and that plaintiff, through his agent, chose the lesser, to which was annexed the valuation of $100 on the horse declared and stipulated therein. The evidence is, that such was and is the contract under which the shipment was made. It expressly provides that the recovery shall not exceed $100. At the instance of plaintiff the court instructed as follows:

"Upon the question of the fixed valuation of the horse as stated in the contract offered by defendant, you are instructed that before the defendant can maintain the defense of limiting its liability to the sum of one hundred dollars, if liable at all, the jury must find that the plaintiff was in fact granted a rate less than that granted to all others for a like service between like points, and that plaintiff's agent knowingly accepted such reduced rate and signed the contract of shipment knowing that it was a reduced rate, and that he had a choice between the contract signed and another at a higher rate in which the horse's value would not be limited, and unless you find this choice was given him at the time he signed the contract then plaintiff would not be bound by it, and you are not limited in fixing the value of the horse at one hundred dollars, but you may fix his value at such sum as from

all the evidence in the case you believe he was reasonably worth.''

This instruction is erroneous, in·that it informed the jury that, in order for defendant to maintain its defense under the special contract, it must appear "that the plaintiff was in fact·granted a rate less than that granted to *all others* for a like service between like points." Such is violative of the principle reflected throughout the Interstate Commerce provisions, for that it is designed that the same rates shall be afforded to one and all alike. It is permissible to provide two rates, one with full common-law liability attached, and a lesser rate based on a valuation declared or agreed upon, provided such rates are available to one and all, as is the case here. [See sections 2 and 3 of the Act of February 4, 1887, 24 Stat. at Large, 379.]

There is no evidence that plaintiff was granted a rate less than that granted to all others for like services, but, on the contrary, the evidence is, the rate was open to one and all desiring .to ship under such contract on such declared valuation. The instruction as worded is misleading and inheres. with error touching this. A rate such as that contemplated in the instruction would be discriminative and of no avail whatever.

There is no evidence of ·fraud or deceit practiced on plaintiff's agent in negotiating the contract and, of course, plaintiff is concluded thereby, for the law devolved the ·duty upon his agent, who, it appears, was familiar with such transactions, to read it and ascertain its contents before affixing his signature thereto. [See O'Bryan v. Kinney, 74 Mo. 125; Mires v. St. Louis S. F. R. Co., 134 Mo. App. 379, 114 S. W. 1052.]

Plaintiff's instruction No. 2 above copied is, therefore, further erroneous, in that it submitted *to* the jury as to whether plaintiff's agent knowingly accepted such reduced rate and signed the contract of shipment knowing that it was a reduced rate, for that, in the absence of fraud, deceit or mistake, of which there is no evidence, he is bound by its provisions.

Plaintiff's instruction No. 5 is as follows:

"The court instructs the jury in this cause that although you may find and believe from the evidence that William Rash signed the contract offered by defendant and purporting to be signed by said Rash and that he knew that it specified a reduced rate, yet the recital in the contract that the rate charged was a reduced rate is not evidence of that fact and it devolves on the defendant to prove to your satisfaction that there was another and different legal rate in existence which it was permitted to charge plaintiff, and unless it has shown that there was such another rate your verdict will be for the plaintiff in such sum as you believe from all the evidence the horse was reasonably worth, if you find the horse was injured as heretofore instructed on defendant's railroad."

This instruction is erroneous, in that it directs the jury that, although plaintiff's agent signed the contract and knew that it specified a reduced rate, yet the recital in the contract that the rate was a reduced one is no evidence of that fact and that it devolved further on defendant to show such to be the fact. It has been declared in numerous cases that the recital of a reduced rate in the contract alone is prima-facie evidence of such fact. [See Mires v. St. Louis & S. F. R. Co., 134 Mo. App. 379, 114 S. W. 1052; McFadden v. Mo. Pac. R. Co., 92 Mo. 343, 4 S. W. 689.] The evidence is, that plaintiff's agent was fully informed concerning the rate at the time he entered into the contract of shipment and that he was familiar with such transaction, as he frequently shipped horses for plaintiff. Moreover, plaintiff's agent does not controvert this testimony, but says only that he does not recall the fact.

The judgment should be reversed and the cause remanded with directions to enter judgment for plaintiff for $100, the value agreed upon in the shipping contract. It is so ordered. *Allen, J.,* concurs, *Reynolds, P. J.,* absent.