DREY & KAHN GLASS COMPANY, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, April 4, 1911.

1. COMMON CARRIERS: Carriage of Goods: Interstate Shipment: Shipper's Constructive Knowledge of Reduced Rate. Where a common carrier has in force two rates for the carriage of an interstate shipment, the lower with and the higher without limitation of the carrier's liability at common law, which have been duly posted and filed with the Interstate Commerce Commission, knowledge of such rates on the part of a shipper may be implied from the fact he chose to ship under the lower of the two.

2. ——: ——: ——: ——: Limitation of Common Law Liability. Where a common carrier has in force two rates for the carriage of an interstate shipment, the lower with a limitation of the carrier's common law liability to a certain amount in case of loss or damage to the goods shipped, and the higher without such limitation, which rates have been duly posted and filed with the Interstate Commerce Commission, the mere choosing by a shipper of the lower of such rates would not operate as a limitation of the carrier's common law liability so as to make it liable only for the amount stated in such rate as the amount to be paid in case of loss or damage, although the shipper had actual knowledge of the two rates and the limitation prescribed under the one he chose; it being necessary that he expressly or by special agreement assent to such a limitation before it will be effective.

3. ———: ———: **Limitation of Common Law Liability.** The law
requires that, in order to be effective, contracts forgiving a
part of the liability annexed by law to the calling of a common
carrier be clear, special and express, and such immunity will
not arise from mere inference, although the contract need not
be in writing nor assume any particular form.

Appeal from St. Louis City Circuit Court. — *Hon.
William M. Kinsey*, Judge.

REVERSED AND REMANDED (*with directions*).

*David Goldsmith* for appellant.

(1) There being no actual agreement and no actual
knowledge, the respondent maintains that there was no
constructive notice, merely because a schedule of the
rates had been filed and posted as required by the Inter-
state Commerce Act, and that the shipment at a rate
thus posted did not carry with it, as a matter of law,
the adoption of the conditions attached to the rate.
Standard Oil Co. of Indiana v. United States, 164 Fed.
376; Kissinger v. Fitzgerald, 152 N. C. 252; Faulk v.
Railroad, 82 S. C. 369. (2) To exonerate the carrier
from its common law liability, there must be a special
contract, asserted to by the shipper. Levering v. Union
Co., 42 Mo. 93; Kellerman v. Railroad, 136 Mo. 177;
Railroad v. Mfg. Co., 16 Wall. 318; Hutchinson on Car-
riers (3 Ed.), secs. 402, 412.

*James F. Green* for respondent.

The agreed statement of facts shows an agreement
between the shipper and the carrier, fixing a value upon
the property transported. Such agreements, when sup-
ported by a sufficient consideration, have always been
upheld by our courts: Gerber v. Railroad, 63 Mo. App.
145; Wyrick v. Railroad, 74 Mo. App. 406; Ward v.
Railroad, 158 Mo. 226; Kellerman v. Railroad, 136 Mo.
177; Livery Co. v. Railroad, 113 Mo. App. 144; Harvey v.

Railroad, 74 Mo. 538; Hart v. Railroad, 112 U. S. 338; Bowring v. Railroad, 77 Mo. App. 252; Duvernick v. Railroad, 57 Mo. App. 556; Goodman v. Railroad, 71 Mo. App. 460; Mires v. Railroad, 134 Mo. App. 385; George v. Railroad, 214 Mo. 561; Moore v. Railroad, 143 Mo. App. 677.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the negligence of defendant common carrier in transporting its goods. The court found the issue for plaintiff and gave judgment against defendant for $37.86 2-3, and plaintiff prosecutes the appeal from that judgment.

The case was tried before the court without a jury. It appears both parties are incorporated companies and the facts out of which the controversy arose between them are stipulated as follows:

"It is admitted that, at the time that shipment in controversy herein was made, the defendant was a common carrier of property for hire between St. Louis, Missouri, and Independence, Kansas. That at said time plaintiff was the owner of four plates of glass, of the value of $194.09, and that this was the value thereof for a long time, to-wit, more than one year prior to said time; that on or about the 12th day of May, 1899, plaintiff delivered said four plates of glass to defendant at St. Louis, Missouri, in good order and condition, for transportation to J. H. Brewster, at Independence, Kansas, and that defendant accepted same for such transportation; that, at the time and place said shipment was made, defendant had in force and posted, and applicable to shipments of the kind here in controversy, a regular tariff or schedule of freight rates and classifications, which had theretofore been filed, and was then on file and applicable to shipments of this character, with the Interstate Commerce Commission at Washington, D. C., whereby glass of the dimensions shipped by plaintiff in this instance could be transported between St.

Louis and Independence, Kansas, by either one of two rates, viz: a rate of $1.51½ per hundredweight, where there was no limitation of the carrier's liability, and a rate of $1.01 per hundredweight, where the carrier's liability for loss or damage was limited to fifteen cents per square foot; that plaintiff delivered said four plates to defendant for transportation at the latter rate of $1.01 per hundred pounds, and the same were accepted for transportation at said rate; that the aggregate dimensions of said shipment of glass were 252 4-9 square feet, which, at 15 cents per square foot, amounted to $37.86 2-3; that the shipment of glass in controversy was so badly broken, while in transit, by the negligence of the defendant that it was rendered wholly worthless; that long prior to the institution of this suit a claim for $194.09 for the full value of said glass was made by plaintiff on this defendant, which claim this defendant recognized to the extent of $37.86 2-3, which it is claimed was the full amount due plaintiff, according to its limited liability aforesaid, which amount of $37.86 2-3 was tendered to plaintiff by defendant before the institution of this suit and by it refused."

The court gave judgment for $37.86 2-3, as if plaintiff had knowledge of the two rates and expressly assented to the limitation on defendant's common law liability prescribed under the rate of $1.01 per hundredweight, and this we believe to be an erroneous view, for, though plaintiff had knowledge of the rate, no express assent to the limitation appears. While the agreed statement shows beyond doubt that defendant had in force two rates for such carriage, one without and one with a limitation on the carrier's liability at common law, not a word therein suggests that plaintiff had actual knowledge of such rates, except in so far as its knowledge is implied from the fact it chose to ship under the lesser of the two, but this we believe to be sufficient on that score. Conceding so much, the mere choosing of the lesser of the two rates for the shipment is insufficient to

operate a limitation upon defendant's common law liability so as to determine the matter as on an agreed valuation, unless plaintiff expressly assented thereto.

It does not appear there was a bill of lading issued or other written contract touching the matter nor does the agreed statement disclose that plaintiff undersandingly accepted the proffer of the lower rate and expressly assented to the agreed valuation therein set forth. But it is argued in support of the judgment that as this was an interstate shipment and it appears the rates were on file with the Interstate Commerce Commission and schedules duly posted in defendant's depots and freight offices, plaintiff was charged with constructive knowledge of the two rates and the condition imposed. Though it be true that the Interstate Commerce Act requires posting of the schedules and rates, to the end of disseminating information thereof to the public, we believe it to be an extreme view to say that such constructive knowledge is sufficient as the basis of a contract limiting the liability of the carrier, through an acceptance by the mere act of shipping the goods alone and without an express assent thereto on the part of the shipper. Especially is this true when it is remembered that it is required contracts forgiving a part of the liability annexed by law to the calling of the common carrier shall be clear, special and express.

It is true there are cases in which the reasoning of the opinion indicates that a carrier may recover from the shipper the full measure of the tariff rate fixed under the Interstate Commerce Act and approved by the Commission after it has performed the service of transporting the goods, notwithstanding its contract to do so for a lesser rate, because the shipper is presumed as a matter of law to know the rates so published and posted and to have essentially contracted accordingly. The reasoning of those cases proceeds as though, notwithstanding the actual agreement between the parties for a lesser rate of freight, the law nevertheless implied a contract at

the tariff rate, for the reason the shipper is conclusively presumed to know from the fact the schedules are posted what such rate is and to have accepted its terms by making the shipment.  Such are the views expressed in Wabash R. Co. v. Sloop, 200 Mo. 198, 98 S. W. 607; Berber v. Wabash R. Co., 63 Mo. App. 145.  We conceded the doctrine of the two cases above cited in Mires v. St. L. & S. F. R. Co., 134 Mo. App. 379, 114 S. W. 1052, but determined it to be wholly irrelevant to the cause then in judgment.  In this view, it is argued that, whatever may have been the prior state of the law, it is now determined with respect to such shipments as fall within the purview of the Interstate Commerce Act that constructive knowledge of rates and conditions attached in the posted schedules alone is sufficient to and does operate a valid contract in accordance with the terms prescribed in and annexed to such rates through an acceptance of such terms by the mere act of shipping, though no express agreement to that effect be had.  That the reasoning portrayed in the opinions above referred to is unsound, in so far as it predicates on the posting of the notices, appears to be settled beyond controversy by a recent decision of the Supreme Court of the United States which alone is the final arbiter on questions pertaining to interstate commerce and constructions of the Act of Congress pertaining thereto.

That the force and effect of such schedules duly posted are not to conclusively charge the shipper with knowledge of the rates by construction of law as the basis of a contract is clearly demonstrated in Texas & Pacific R. Co. v. Mugg, 202 U. S. 242, for it is determined by the court in that case that the right of the carrier to recover from the shipper the tariff rate, notwithstanding its contract to transport the goods for a rate less than that authorized by the Interstate Commerce Commission, rests alone on the law which fixes the rate and in no respect arises from contract.  Indeed, it is said in that case that the rate on interstate ship-

ments is not a subject of contract at all, for the rate itself and the right to have it is fixed by the force of the Act of Congress and its approval by the Interstate Commerce Commission thereunder. See, also, to the same effect, Southern R. Co. v. Harrison, 119 Ala. 539. The judgment given by the Supreme Court of the United States on the facts in Gulf, Colo., etc., Co. v. Hefley, 158 U. S. 98 is to the same effect, though the precise question is not discussed in the opinion. See, also, Texas & Pacific Ry. Co. v. Cisco Oil Mill, 204 U. S. 449, wherein the schedules were not posted at all and the court declared, notwithstanding, that the rate prevailed as a matter of law.

It is therefore obvious that in so far as the recoveries in the cases mentioned were allowed or denied on the theory of a contract operated through constructive knowledge of the rates and an acceptance through the mere act of shipment, the rule no longer prevails. But, though it be conceded the doctrine above invoked is sound and subsists, at most it affords no more than an implied contract and avails naught to the defendant here, for in every instance where a limitation on the carrier's liability is asserted it must be made to appear that a special or express contract to that effect exists. [Hollister v. Nowlen, 19 Wend. (N. Y.) 234; Cole v. Goodwin, 19 Wend. (N. Y.) 251; Hutchinson on Carriers (3 Ed.), (M. & D.), secs. 406, 402, 403; Hart v. Pennsylvania R. Co., 112 U. S. 331; York Co. v. Central Railroad, 3 Wall. 107, 70 U. S. 107.] So it is, too, if plaintiff had actual knowledge of the two rates and the limitations prescribed under the one it chose, for this of itself is insufficient to preclude its right to pursue defendant as an insurer, unless it appears as well that it expressly or by special agreement assented to the agreed valuation. Though the rule is otherwise in England, from an early date in this country, the courts have universally declared that mere knowledge of rates and limitations annexed, without, more is unavailing.

It is said public policy forbids that the mere act of shipping alone with knowledge of notices prescribing limitations on the carrier's liability shall operate as an acceptance of the terms to the extent of surrendering any portion of the liability annexed by law to a calling of such high public importance as that of common carriers. [Cole v. Goodwin, 19 Wend. 251; Hutchinson on Carriers (3 Ed.), secs. 399, 406.] It is therefore the universal rule of decision in this country that if a common carrier accepts goods for transportation it does so with the full measure of its common law liability, annexed, unless there be a special or express contract to the contrary. Such immunity may not arise from mere inferences but on the contrary the contract by which the exemption or limitation on the common law liability is secured must be clear, special and express; that is to say, there must be an express assent of the shipper though it need not be in writing. [Hutchison on Carriers, secs. 402, 406.] That the express assent of the shipper to such limitations must be fairly and understandingly had as precedent to the right to enforce them is illustrated in Railroad Co. v. Mfg. Co., 83 U. S. 318, 16 Wall. 318, where it was declared that though the shipper accepted but did not sign a receipt containing such a limitation and did not dissent therefrom at the time, the full measure of the carrier's liability nevertheless continued. It is, of course, unnecessary that the contract shall be in writing in every case or that it shall assume any particular form, but Mr. Hutchinson says:

"The proof of assent to the terms proposed by the carrier must be clear in such a case; for the law having imposed an important duty upon him upon grounds of public policy, will not permit the carrier to divest himself of its responsibilities and throw the loss upon his employer, when the proof that the latter so agreed is doubtful." [Hutchinson on Carriers (3 Ed.), sec. 411.]

The rule above stated has obtained with us in Missouri for many years, for it is said in an early case that to have the effect of exonerating the carrier or limiting its liability at common law, there must be a special contract assented to by the shipper. [See Levering v. Union Transportation, etc., Co., 42 Mo. 88, 93.] The more recent authority of Kellerman v. K. C., St. J., etc., R. Co., 136 Mo. 177, 34 S. W. 41, 37 S. W. 828, is to the same effect, except that it requires the assent of the shipper shall be manifested by a special or express contract, "fairly and understandingly made," and this, too, upon a sufficient consideration, for which a reduced rate of freight will suffice. That such is the rule of decision in this state and is so understood is obvious throughout the cases, as will appear by reference to the following authorities: Rice v. K. P. Co., 63 Mo. 314; Harvey v. Terre Haute, etc., R. Co., 74 Mo. 538; Witting v. St. Louis, etc., R. Co., 101 Mo. 631, 14 S. W. 743; Mires v. St. L. & S. F. R. Co., 134 Mo. App. 379, 114 S. W. 1052; McFadden v. Mo. Pac. R. Co., 92 Mo. 343, 4 S. W. 689.

Though not involving an interestate shipment nor a consideration of the Interstate Commerce Law, the Supreme Court of South Carolina reviewed the same question as that here involved under the statutes of that state and the classification and rates promulgated by the State Board of Railroad Commissioners. The court gave judgment to the same effect as above indicated and declared that unless there be a special contract to which the shipper has expressly assented for a limitation thereon, the carrier remains responsible to the full extent of the obligation annexed by the common law. [See Faulk v. Columbia, Newberry and Laurens R. R. Co., 82 S. C. 369.]

As it does not appear plaintiff expressly assented to the limitation of defendant's liability and agreed upon it as the measure of recovery in event of loss, it is obvious there is no special contract understandingly made to that effect, and the full measure of defendant's

common law liability obtains. The judgment will therefore be reversed and the cause remanded with direction to enter judgment for plaintiff for the amount stipulated to be the actual value of the glass, to-wit, $194.09. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.