## AMERICAN SILVER MANUFACTURING COMPANY, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, May 6, 1913.**

1. **COMMON CARRIERS: Interstate Commerce: Supremacy of Federal Laws.** The extent of a carrier's liability for loss of an interstate shipment of goods is governed by the Interstate Commerce Act of February 4, 1887, 24 Stat. at Large, 379 (U. S. Comp. St. 1901, p. 3154), and its amendments, including that of June 29, 1906, 34 Stat. at Large, 584 (U. S. Comp. St. Supp. 1911, p. 1284), and the decisions of the United States Supreme Court construing these acts, which supersede all State regulations and rules of decision on the subject.

2. **CONTRACTS: Written Contract: Prior Netgotiations.** All prior negotiations and conversations antecedent to the execution of a contract are deemed to have been merged in it, and, in an action on it, the recovery must be in accordance with its terms, in so far as they are valid.

3. **COMMON CARRIERS: Interstate Commerce: Limitation of Carrier's Liability.** Where a common carrier publishes and files, in accordance with the Interstate Commerce Act, two rates on interstate shipments, under the lower of which the carrier's liability for loss is limited to ten times the freight paid, and under the higher of which the carrier's liability is unlimited, a shipper whose goods are shipped under the lower rate may recover, in the event of loss, only in accordance with the limitation annexed to such rate; such limitation being valid under the Interstate Commerce Act and its amendments as construed by the Supreme Court of the United States.

4. ———: ———: ———. Where the bill of lading issued by a carrier for an interstate shipment provided that the amount of any loss should be computed on a basis of the value of the property at the time of shipment, unless a lower value was represented in writing by the shipper, or was agreed on, or was determined by the classifications or tariffs on which the rate was based, in any of which events the lower value should be the maximum amount to govern such computation, and the shipment was made under a rate, published and filed in accordance with the Interstate Commerce Act, which limited the carrier's liability, in case of loss, to ten times the freight paid, the shipper, in an action on the contract for loss

of the shipment, was bound by the contract as written, and a recovery could be had only in the amount of ten times the freight paid, notwithstanding the fact that the shipper disclosed to the carrier's agent that the value of the goods was several thousand dollars, and the carrier, and not the shipper, selected the rate charged, when another and higher rate was in force, under which the carrier would have assumed full liability for loss.

5. **INTERSTATE COMMERCE: Rates not Subject of Contract.** Interstate commerce rates, when duly filed and approved, are fixed by law and, therefore, not the subject of contract between the parties.

6. ————: **Presumption of Reasonableness of Rates.** The question of the reasonableness or unreasonableness of rates established in accordance with the Interstate Commerce Act, and the conditions attached to them, is not one for the courts to determine in the first instance, but primarily is committed to the Interstate Commerce Commission, and, therefore, it is the duty of the courts to treat with such rates and annexed conditions as being reasonable and just, whatever may be their views on the subject.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED AND REMANDED (*with directions*).

*James L. Minnis, N. S. Brown* and *Bates, Blodgett, Williams & Davis* for appellant.

(1) We assert that where the plaintiff not only declares upon a special contract with a carrier, but further offers the contract in evidence and expressly during the trial disclaims any intention to depart from or vary its terms, he thereby affirms its validity and must abide by its terms. Railroad v. Paramore, 119 Ga. 690; Wetsell v. Dinsmore, 4 Daly (N. Y.), 195; Inman v. Seaboard Airline, 159 Fed. 960; Chlanda v. Transit Co., 214 Mo. 260; Fox v. Windes, 127 Mo. 512. (2) A shipment by rail from the city of St. Louis, Missouri, to the city of Peoria, Illinois, is an interstate commerce shipment and controlled by the inter-

state commerce acts of Congress, so far as their provisions are applicable. These acts are found in 3 U. S. Compiled Statutes, pages 3153, et seq., and 1911 Supplement thereto, pages 1284, et seq. (a) Both railroads and shippers in interstate shipments are bound by the established rates, any contract to the contrary notwithstanding. Railroad v. Abilene, etc., Co., 204 U. S. 426, 445; Railroad v. Oil Mills, 204 U. S. 449, 451; Railroad v. Albert Com. Co., 223 U. S. 573, 594, 596; U. S. v. Millar, 223 U. S. 599; Robinson v. Railroad, 222 U. S. 506. (b) Both shipper and railroad are bound by the obligation of the railroad, incurred, under the established rates and classifications and regulations, by the road's accepting the shipments and receiving or charging the rates. Railroad v. Wallace, 223 U. S. 481; Railroad v. Riverside Mills, 219 U. S. 186; Railroad v. Abilene Oil Mill, 204 U. S. 426, 440. (c) That which the shipper becomes entitled to from the railroad by paying the rates charged is of necessity as much regulated by the interstate commerce acts as the rates, for rates, without rights acquired therefor, or distinct from the particular rights accruing therefor, is meaningless. (d) No arrangement of the shipper or the railroad is valid which works an unjust discrimination. Interstate Commerce Acts of Congress. (e) At the trial appellant offered in evidence printed copies of the rates, classifications and regulations on file with the Interstate Commerce Commission, certified to by the secretary of that commission, as true copies of the records, and showed that they were open for inspection at the office in St. Louis where the goods were shipped. This was sufficient proof of the establishment of such rates, classifications and regulations. Railroad v. Albers Com. Co., 223 U. S. 573, 594; Railroad v. Oil Co., 204 U. S. 449.

*A. M. Frumberg, R. P. Spencer* and *A. R. Russell* for respondent.

(1)   Plaintiff's demurrer to defendant's special defense was properly sustained:   (a)  Because it fails to show that there was an actual and reasonable valuation placed upon the goods.   In re Released Rates, 13 Interstate C. C. R. 556; Hutchinson on Carriers, sec. 427; Railroad v. Jones, 132 Ala. 437; Railroad v. Huslett, 112 Tenn. 348; Railroad v. McIntire, 82 S. W. (Tex.) 346; Lace Curtain Mills v. Navigation Co., 145 Fed. 701; Hohl v. Norddeuscher Lloyd, 169 Fed. 990; Doyle v. Railroad, 126 Fed. 841; Railroad v. Lockwood, 84 U. S. 357; Leas v. Railroad, 157 Mo. App. 155, 136 S. W. 963.   (b) Because it alleged nothing more than an implied contract based upon constructive notice to the shipper by the publication of rates and classification and did not allege an express and special contract limiting the liability of the defendant.   Glass Co. v. Railroad, 156 Mo. App. 178, 136 S. W. 757.   (c) It did not allege that two or more rates existed and that plaintiff had accepted the lower rate.   Leas v. Railroad, 157 Mo. App. 155, 136 S. W. 963; George v. Railroad, 214 Mo. 551.   (d) The facts alleged in the answer do not show that defendant was a special and not a common carrier of goods.   Moore on Carriers, 101; Hutchinson on Carriers, sec. 153; Railroad v. Lockwood, 84 U. S. 507; Steam Co. v. Phoenix Ins. Co., 129 U. S. 441.   (2) Plaintiff is not bound by invalid or illegal provisions inserted in the bill of lading.   Powder Mfg. Co. v. Railway Co., 101 Mo. App. 442, 196 Mo. 663.   (3)   No immunity or privilege created by the interstate commerce law having been asserted or denied or involved in this action, the rights and liabilities of the parties are to be determined by the law of this State.   Railroad v. Hughes, 191 U. S. 447; Railroad v. Solan, 169 U. S. 133; Railroad v. Tobacco Co., 169 U. S. 311; Railroad v. Haver, 169 U. S.

613; Calderon v. Steamship Co., 170 U. S. 272; Railroad v. Ohio, 173 U. S. 285; Railroad v. Illinois, 177 U. S. 514; United States v. Thompson, 93 U. S. 587; Latta v. Railroad, 172 Fed. 850.

NORTONI, J.—This is a suit for damages accrued through the alleged breach of a contract pertaining to an interstate shipment of freight. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is a manufacturer of silver plated ware in St. Louis and defendant is a common carrier engaged in interstate traffic. The shipment involved three boxes of silver plated ware from St. Louis, Missouri, to Peoria, Illinois, two of which boxes were lost in transit, and for the alleged value of these—that is $4764.04—the suit is prosecuted. There is no suggestion in the case that the loss occurred through negligence. Indeed, it is not revealed how nor where the goods were lost, but it does appear they were lost in transit through some means while in the possession of the carrier and therefore never delivered.

The suit proceeds as in assumpsit for the alleged value of the goods lost—that is $4764.04—invoking the obligation of an insurer, which, it is said, inheres in the transaction because of its nature and that of defendant's calling. Defendant had fully complied with the requirements of the Interstate Commerce Act and filed with the Interstate Commerce Commission its tariff sheets including rates, schedules and classifications pertaining to such shipments of interstate freight, and such rates, schedules and classifications had been duly approved by the commission and were posted, in accordance with the provision of law, in defendant's freight depot in St. Louis at the time the contract of affreightment was made. By these schedules and classifications so on file and promulgated, defendant had established two rates of freight with respect to such shipment between St. Louis and Peoria, Illinois, which,

together with the conditions and classifications attached thereto and revealed in the tariff sheets, had been duly approved by the Interstate Commerce Commission. One of these rates, that is the lower, it appears, was fixed, determined and approved, together with the condition annexed thereto, to the effect the carrier's liability should be limited thereunder in accordance with the classification and schedules revealed in the tariff sheets, while the other, or higher rate, was fixed, determined and approved as a proper compensation for carriage with the full carrier's liability annexed. The tariff sheets and classifications therein contained provide that all shipments made under the lower rate shall be subject to a maximum liability for loss of goods on the part of the carrier of ten times the freight paid. The higher rate provided in the tariff sheets is double the reduced rate referred to and is without limitations as to carrier's liability annexed— that is, such rate is available to all persons desiring to ship, without any limitation as to the right of the shipper under the law, in event of loss of or damage to his goods while in possession of the carrier.

It appears plaintiff, by its manager, delivered the consignment of plated ware to defendant at its freight office in St. Louis, and, indicating his purpose to ship it to Peoria, Illinois, requested a bill of lading therefor. Upon defendant's agent inquiring the character of the goods and their value, plaintiff's manager replied that the consignment consisted of plated silverware and its value was "close to $5000." Thereupon defendant's agent issued to plaintiff the shipping contract in suit here, which is an ordinary bill of lading, describing the shipment as three boxes of plated ware, but without fixing any value thereon whatever. Defendant's agent exacted a freight charge for the through shipment of $4.17, which plaintiff paid at the time. Such is the lesser tariff rate fixed for such shipments under the limitations on the carrier's lia-

bility above stated. There is no suggestion in the bill of lading as to the actual value of the goods, nor is there anything contained therein, pertinent to the present controversy, resembling an agreed valuation as the amount recoverable in event of loss, save an apt reference to the valuation determined by the classifications or tariffs upon which the rate of freight is based. The bill of lading recites defendant "received" the consignment "subject to the classifications and tariffs in effect on the date of issue of this original bill of lading." One of the conditions printed in the bill of lading touches upon the subject of agreed valuation, and, in so far as pertinent here, refers to the classifications and tariffs upon which the rate of freight is based for the criterion to determine the extent of the liability of defendant to compensate the shipper in event the goods are lost or damaged while in its possession. We copy this condition of the contract here, but the italics are our own.

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, *unless a lower value* has been represented in writing by the shipper or has been agreed upon or *is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation,* whether or not such loss or damage occurs from negligence."

There was no "lower value" "represented in writing by the shipper" and there was none *expressly* agreed upon between plaintiff's manager and defendant's agent, when the contract evidenced by the bill of lading was entered into. Therefore, the only relevant provision of the condition of the shipping contract above copied touching the value is that which

refers to the tariffs and classifications and which we have italicized.

Defendant set forth in its answer the fact that it had complied with the Interstate Commerce Act and had on file at the time of the contract of the shipment its tariff sheets, including rates, schedules and classifications, and that the same were duly posted in its freight offices in St. Louis, revealing the two rates together with the conditions annexed thereto as hereinabove stated, and insisted that, by entering into a contract of shipment under the lesser of the two rates, plaintiff agreed that the amount of the recovery, in case of loss of the goods, should be ten times the amount of the freight charge, that is, $41.70, which it offered to pay. The court treated these facts as unavailing in defense of the suit, and, over the objection and exception of defendant, permitted plaintiff to prove the full value of the silver plated ware lost in transit, and found such value to be $2328.65. Judgment was accordingly given for plaintiff for this amount.

The principal question for consideration relates to the matter of incorporating in the shipping contract the provisions of defendant's tariff pertaining to the rate and the limitations annexed thereto under its schedules and classifications. It is insisted by plaintiff that the valuation of ten times the freight paid stipulated in the tariff sheets is not to be regarded as parcel of the contract of shipment, for the reason that such would operate a limitation upon the liability of the carrier at common law, of which no part is to be forgiven in any case except on the *express* assent of the shipper, and that the contract of affreightment contains no express provision touching the matter, as in the case of an agreed valuation. It is argued, furthermore, that here plaintiff declared the value of his goods at the time the shipment was made to be "close to $5000" and notwithstanding defendant, on receiv-

ing them and issuing the bill of lading of its own voli-
tion, fixed the freight charge at $4.17, without any re-
quest from plaintiff for such rate.

Much is said in the briefs concerning the rule of
decision which prevails in Missouri as to limitations
upon the carrier's common law liability, but all of this
is to no avail in the instant case, for the reason the
shipment is interstate in character and falls within
the purview of the act of Congress touching interstate
commerce. Congress, having manifested its purpose
through the enactment of the Interstate Commerce Act
to take possession of the subject of the liability of car-
riers by railroad on account of interstate shipments,
as appears by reference to the Interstate Commerce
Act and its amendments, including that of June 29,
1906 (34 United States Stat. at Large, 584), and es-
pecially bills of lading and shipping contracts through
what is known as the Carmack Amendment, incorpo-
rated in section 20 of that Act, page 595, such legisla-
tion and the decisions of the Supreme Court of the
United States expounding it supersede all State regu-
lations and rules of decision on the subject. The Fed-
eral statutes touching this matter and the decisions of
the Supreme Court of the United States construing
them afford an exclusive rule for the determination of
controversies pertaining to the subject. This is true,
too, notwithstanding the provision of the Carmack
Amendment, to the effect that the enactment shall not
deprive any holder of a bill of lading of any remedy
or right of action that he had under the existing law,
for this is construed to refer alone to existing Federal
law. [See Adams Express Co. v. Croninger, 226 U. S.
491; Chicago, Burlington & Quincy R. Co. v. Miller,
226 U. S. 513; Chicago, St. Paul, etc., Ry. Co. v. Latta,
226 U. S. 519.] When we come to examine the rule
of decision being evolved in the Federal Supreme
Court with respect to interstate shipments, it is ascer-
tained that the tendency is to determine the right re-

specting the amount and value of the recovery by reference to the rate at which the shipment was made, and the doctrine of estoppel is invoked against the shipper to preclude him from claiming more than the rate paid would purchase according to the tariff provisions of which he is deemed to be fully advised. Obviously this doctrine does not comport with that which obtains in Missouri and is frequently administered in our courts, for here we declare that the full common law liability is annexed to every transaction of affreightment entered into with a common carrier, unless it is expressly forgiven by the shipper, and this, too, upon a valuable consideration.

But it is argued this doctrine proceeds under the Interstate Commerce Law on the theory that the shipper has declared the value of his goods at a small amount and obtained the lower rate on a representation to that effect, in which event it is just to preclude his right to recover more on the theory of an estoppel, for he thus voluntarily availed himself of the benefits which lie in the lower rate and thereby diminished the earnings of the carrier through representing his goods of the lesser value. It is argued that, however just the doctrine may be in a proper case, it should not obtain here for the reason plaintiff declared the value of his goods at the time the shipment was made to be "close to $5000" and made no request with respect to the rate. The rate, it seems, was selected by defendant's agent without inquiry on the part of plaintiff and the freight charge fixed at $4.17 in accordance with the tariffs with limitation of the carrier's liability, and it is clear no misrepresentation as to value was made by plaintiff to obtain it. But obviously this fact is not available here, for the suit proceeds on the contract as in assumpsit for its breach and not on the liability of the carrier annexed by law. There is no suggestion in the case that plaintiff was deceived or misled by de-

fendant's agent or that any fraud or imposition was practiced in negotiating the transaction pertaining to the shipment. This being true, all prior negotiations and conversation antecedent to. the execution of the contract are beside the case, for they are deemed to have merged in the writing and the .recovery is to be had, if at all, in accordance with the terms of the contract declared upon, insofar as they are valid and not illegal. [See Hart v. Penn. R. Co., 112 U. S. 331; O'Bryan v. Kinney, 74 Mo. 125; see, also M., K. & T. R. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. Rep. 397.] When no charge of fraud or deceit or sharp practice is relied upon in the case or suggested in the evidence, it is obvious that so much of the contract as concerns the rate of freight paid and the limitations of the carrier's liability annexed thereto is neither illegal nor void as against the declared public policy of the United States. [See Kansas City Southern R. Co. v. Carl, 227 U. S. 639; 33 Sup. Ct. Rep. 391.] In so far as the public policy of Missouri is concerned, we have none on interstate commerce, for the very good reason that Congress, having acted on the subject, under the power given it in the Federal Constitution, the sovereignty of the United States occupies the entire field and excludes whatever regulations or rules of decision heretofore obtained with us. [See Second Employers' Liability Cases, 223 U. S. 1; Adams Express Co. v. Croninger, 226 U. S. 491.]

The suit must, therefore, be regarded as proceeding upon and in affirmance of every provision of the contract revealed by the bill of lading on which the petition declares, after putting aside, as entirely without influence on the controversy, the fact that plaintiff represented the true value of the goods at the time. In this view, it is entirely clear that plaintiff is entitled to recover not exceeding $41.70 under the contract, for such is ten times the amount of the rate of freight paid on the entire shipment. Indeed, it may

be that, as but two boxes of silverware out of the three shipped were lost, he would not be entitled to so much; but the point is not made and will not be considered. The contract sued upon in plain terms stipulates that the shipment was received by defendant, subject to the classifications and tariffs in effect on the date of the issue of the bill of lading. Besides this, the amount of any loss or damage, it is stipulated, is to be computed on the basis of the value of the property—that is, the full invoice price—only when it appears that no lower value has been represented in writing by the shipper or has been agreed upon or "is determined by the classifications or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

Here, it is true, a lower value was not represented in writing by the shipper nor was a lower value expressly agreed upon, as is usual in the case of agreed valuations in the contract. But though such be true, the stipulation refers the matter of the value recoverable in event of loss to be determined by the classifications or tariffs upon which the rate is based. The rate of $4.17 was based upon the tariffs and classifications, which provide a limitation upon the liability of the carrier for loss of the goods to ten times the amount of the freight paid. Such is the contract declared upon and the provision appears to be in accord with the trend of decision in the Supreme Court of the United States in similar cases involving interstate shipments. Indeed, it seems that this provision of the contract is precisely in accord with the doctrine of that court, for it adheres throughout to the principle of estoppel, and declares a liability on the part of the carrier to respond for loss in proportion to the charge for the carriage paid; on the theory that a shipper may not obtain the benefit of the lower interstate rate

unless the conditions and limitations annexed to the rate are taken by him as well.

It is true the cases over which we have pondered reveal contracts of affreightment containing express provisions imposing the limitations upon the carrier's liability more explicit than the one in judgment here, but all of them refer to the rates and classifications, which, it is said, are fixed as a matter of law on filing with and approval by the Interstate Commerce Commission. The court proceeds on the theory that the shipper's knowledge of the lawful rate is conclusively presumed and he will not be heard to say he did not know it. Indeed, the rates, when duly filed and approved, are fixed by law and therefore not a subject of contract between the parties. [Texas & Pacific R. Co. v. Mugg, 202 U. S. 242; Drey & Kahn Glass Co. v. Mo. Pac. R. Co., 156 Mo. App. 178, 136 S. W. 757.] The broad purpose of the Interstate Commerce Act is to assure equality to one and all in the matter of interstate shipments and to prevent all manner of discriminations, either directly or indirectly, in favor of any shipper. Because of this the rates are fixed under the authority of the law and may not be varied to suit the exigencies of any particular case. From this premise, the Supreme Court of the United States, in expounding the statutes, rules, too, that the rates so established inhere with certain obligations and limitations on obligations which must be protected inviolate to one and all alike. This, it is said, is in order to effectuate the broad purpose of the enactment that no discriminations may be had, either directly or indirectly. Then, too, the rates are considered by that court and the Interstate Commerce Commission, in a measure, as premiums for insurance, and it is said it is proper to adjust them with the view to the obligation of the common carrier as an insurer so that fair remuneration may be had in collecting the rate in proportion to the value to be compensated in event the

loss occurs. The rates are therefore relative and based on valuation annexed.

Besides the cases of Kansas City Southern R. Co. v. Carl, 227 U. S. 639; 33 Sup. Ct. Rep. 391; M., K. & T. R. Co. v. Harriman Bros., 227 U. S. 657; 33 Sup. Ct. Rep. 397; Adams Express Co. v. Croninger, 226 U. S. 491, portraying this view, see, also, for the view of the commission, In The Matter of Released Rates, 13 Interstate Commerce Reports, 550. In this view, contracts of affreightment, which purport to stipulate a special privilege to the shipper not open to one and all alike in the schedules and classifications filed, are declared of no effect and unavailable. Such is the case of Chicago & Alton R. Co. v. Kirby, 225 U. S. 155. There Kirby, the shipper, paid the full tariff rate, and, according to his contract, was to receive expedited service, in that his shipment of horses from Springfield, Illinois, destined for New York, were to be carried so as to make connection with a certain train for quick passage at Joliet, Illinois. The connection was not made and the shipper sued as here for a breach of the contract. The Supreme Court denied the right to relief on the grounds that, though the full tariff rate was paid and the contract between the parties contemplated an expedited service, no such service was stipulated in the rate on file with the commission and therefore available to one and all alike. To sustain the suit would operate a discrimination. The principle obtains here, too, for if plaintiff may have full compensation for the value of its goods on paying the rate of $4.17, then the result would operate a discrimination in favor of it in that no such recompense is available to other persons at the same rate by the tariff and classifications on file.

The most recent case with which we are familiar is that of Kansas City Southern R. Co. v. Carl, Advance Sheets, 227 U. S. 639; 33 Sup. Ct. Rep. 391. A few excerpts from that opinion will illustrate the

views of the court on the question involved in the instant case. The court says, page 394, ''When a shipper delivers a package for shipment and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped, upon plain principles of justice, from recovering, in case of loss or damages, any greater amount.'' Then, on page 395, the court says, ''The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss or damage a greater sum.'' Again, on the same page, the court reiterates a familiar expression contained in many decisions that ''The rate of freight is indissolubly bound up with the valuation.'' Further on, in the same opinion, page 396, in speaking of the limitations which the carrier is permitted to annex to the tariff rates and incorporate in the shipping contract, the court says, ''To the extent that such limitations of liability are not forbidden by law, they become, when filed, a part of the rate.''

From these expressions and the principle reflected throughout the authorities referred to, it is obvious that when the shipper contracts for an interstate transportation of his goods and avails himself of the lower rate, with apt reference in the contract to such rates and schedules on file with the commission and the values annexed, as in this case, his compensation, in the event of loss, is to be measured by the valuation of the goods on which the rate is established, for the rate and the valuation are indissoluble. No one can doubt that this doctrine of the cases referred to, in its broad significance impinges upon the old-fashioned way of entering into an actual contract as by the full and free assent of the parties, and works out a resulting contract otherwise made by the operation of law and the application of the principle of estoppel. But, be this as it may, the Supreme Court has but recently

declared there is no absolute freedom of contract and that the right may be regulated for the public good. [See Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186.] *But aside from this, plaintiff is estopped here from asserting that he did not select the rate and declare the value upon which it is fixed, for the very good reason that he sues on the contract of affreightment based thereon and affirms its validity and effect in every part.* [Fox v. Windes, 127 Mo. 502, 30 S. W. 323; Sage v. Finney, 156 Mo. App. 30, 135 S. W. 996; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S. W. 249.]

It is true the measure of compensation annexed to the rate of $4.17 for the shipment is meager and, no doubt, will entail especial hardship in the instant case, but be that as it may, the question of the reasonableness or unreasonableness of the rates and the conditions attached to them is not a juridical one for the courts to determine in the first instance, but rather is committed primarily alone to the Interstate Commerce Commission, and it is therefore our duty to treat with the rate and conditions annexed as reasonable and just in all respects whatever may be the view of the court on the subject. [Texas & Pac. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 440, 441.]

Plaintiff insists that the judgment given in Drey & Kahn Glass Co. v. Mo. Pac. R. Co., 156 Mo. App. 178, 136 S. W. 757, is precisely in point here and sustains the proposition that full common law liability of the common carrier is annexed to every contract of shipment transported by a common carrier unless the shipper *expressly* assents to a limitation thereon. There can be no doubt that that case declares such to be the doctrine of the law, and it is supported by ample authority. Indeed, such has been the universal rule of decision, as we understand it. That case involved an interstate shipment, as here, but no contract pertaining to it was entered into between the shipper and

the carrier other than an implied one from the mere acceptance of the goods and the payment of the freight. Furthermore, the suit was not on the contract in that case, because there was no express contract of affreightment, but instead it proceeded on the common law liability of the carrier as insurer, for the value of the goods lost in transit. The shipper there merely delivered the goods to the carrier and paid the freight, which appeared to be the lesser of the two tariff rates. No bill of lading was issued nor agreement of any kind made touching a limitation on the carrier's liability annexed by law. The goods were lost in transit and the shipper sued for their actual value and this we held he was entitled to recover in the circumstances stated. In so declaring the law, we asserted the doctrine announced by the Supreme Court of the United States in Hart v. Penn. R. Co., 112 U. S. 331, 340. We quote from the language of the court in that case touching the established rule of decision applied in the Drey & Kahn Glass Company case:

"As a general rule and in the absence of fraud or imposition, the common carrier is answerable for the loss of a package of goods though he is ignorant of its contents and though its contents are ever so valuable, *if he does not make a special acceptance.*" (The italics are ours.)

This doctrine, that the liability of the carrier attends every shipment unless expressly limited by the assent of the shipper, has ever obtained in this country as will appear by reference to the following authorities in point: New Jersey Steam Navigation Co. v. Merchants' Bank, 47 U. S. (6 How.) 344, 382, 383; Railroad Co. v. Mfg. Co., 83 U. S. 318, 328, 329; 3 Ency. of U. S. Sup. Ct. Rep. 606, 607. Though the Hart and other cases cited were decided prior to the passage of the Interstate Commerce Statute, it appears the Supreme Court of the United States has rec-

ognized and declared the identical rule .in respect of interstate shipments since that enactment became effective. The Interstate Commerce Act became a law in 1887, and the Supreme Court of the United States recognized and declared the identical rule above stated, and this, too, concerning an interstate shipment, as late as 1904, as will appear by reference to Cau v. Tex. & Pac. Ry. Co., 194 U. S. 427, 431. In view of this, we adhere to that doctrine, even in the matter of interstate shipments, and shall do so until the Supreme Court of the United States rules otherwise, which we may add, is very probable, according to the trend of recent decisions. But as a necessary corollary to that doctrine pertaining to interstate shipments, it should be said that, even where no actual contract of shipment is made, the carrier, in order to obviate a possible discrimination after loss and its full compensation, may sue the shipper and recover the higher rate of freight stipulated in the tariffs on file. Such is the view of the Supreme Court of New Hampshire, as appears from the recent case of American Express Co. v. Kimball & Nutter, 86 Atl. 258.

However all of this may be, the suit in the instant case is on the contract, and the contract declared upon, by express and appropriate words, refers to the tariff sheets and classifications on file for the valuation recoverable and as the one on which the rate of freight is based. It is clear that this express reference incorporates such valuations into the contract of shipment and the recovery is to be limited accordingly. It is clear, too, that no such question was in judgment in the Drey & Kahn Glass Company case for the very good reason that no actual contract of any kind was in suit there. At most, it was an implied one, but sufficient to invoke the obligations of a common carrier in favor of the shipper whose goods it took for transportation.

The judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff in accordance with the views herein expressed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.