## MIRIAM DROZINSKI, Appellant v. HAMBURG-AMERICAN LINE, Respondent.

St. Louis Court of Appeals, January 4, 1916.

1. **CONFLICT OF LAWS: Law of Forum.** In an action involving a contract made in a foreign country, where there is no evidence as to the law of such country regarding the matter in controversy and it is not contended that the law of such country governs, the law of the forum is to be applied.

2. **COMMON CARRIERS: Loss of Baggage: Limitation of Liability.** In an action against a steamship company for common-law liability for loss of baggage, defendant pleaded that

Drozinski v. Hamburg-American Line.

its liability was limited to $25 by reason of a provision to that effect in the passage contract. Plaintiff was unable to read the language in which the passage contract was written. She made no agreement to be bound by the terms of the passage contract, did not sign the same, was not informed of its contents, and had no knowledge concerning it. *Held*, that there was no valid limitation of liability, since it was not shown that there was a contract therefor, fairly and understandingly made with plaintiff.

3. ———: ———: ———: **Instructions.** In such case, an instruction, that the recovery should be limited to $25, if the jury found that plaintiff received the passage contract limiting liability to that amount, and actually knew of the contents of such ticket, or received the same in time to have informed her self of its contents before the sailing of the vessel upon which she contemplated taking passage, *held* erroneous, in view of the fact that the evidence did not tend to establish the existence of either of the hypotheses submitted; testimony that passengers usually received their contracts two or three days before the departure of the steamer not tending to prove that that was done in this instance.

4. ———: **Limitation of Liability.** In order for a common carrier to limit its liability, it must appear that the passenger in some manner assented to the terms and conditions of the contract purporting to limit liability, or at least that he accepted and used the ticket or contract of carriage containing such limitation under such circumstances as to impute to him knowledge of its contents and his assent to its terms and conditions.

5. **INSTRUCTIONS: Necessity of Being Supported by Evidence.** An instruction which submits a hypothesis not warranted by the evidence is erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

REVERSED AND REMANDED.

*Adolph Abbey, Wendell Berry* and *Fauntleroy, Cullen & Hay* for appellant.

The proof showed that the plaintiff was an inexperienced foreigner; could not speak the German language; that the contract attempting to limit liability was in the German language; that she did not

see it, could not read it and could not understand it and did not sign it, and the limitations were on the reverse side, and not on the side which a passenger would ordinarily look at. She was not bound by a stipulation entered into under such circumstances. Engberman v. North German Lloyd S. S. Co., 84 N. Y. S. 201; Railroad Co. v. Baldouf, 16 Pa. St. 67; Wood v. Cunard S. S. Co., 192 Fed. 293; Central R. Co. v. Kavanaugh, 92 Fed. 56; Deierling v. Wabash R. Co., 163 Mo. App. 292; Glass Co. v. Railroad, 156 Mo. App. 178.

*Muench, Walther & Muench* for respondent.

(1) Where there is a substantial conflict in the testimony, it is proper to instruct the jury that they may disregard all or any part of the testimony of any witness who, in their opinion, has willfully sworn falsely to any material fact. Schuler v. Ins. Co., 176 S. W. 274; Price v. Bldg. & Construction Co., 177 S. W. 700. (2) Where a steerage ticket is so framed and worded as to justify the conclusion that is was intended to represent the entire contract of transportation and certain limitations or conditions are plainly printed upon it, it becomes a binding contract and the passenger is bound to such limitations or conditions, where he accepts the ticket and uses it for the purposes of his trip. Aiken v. Wabash R. R. Co., 80 Mo. App. 8; Robert v. Railroad, 148 Mo. App. 96. (3) Limitation of the liability of a steamship company to $25 for damage to or loss of the baggage of a steerage passenger is reasonable. Aiken v. Wabash R. R. Co., supra; Robert v. Railroad, supra; The Kensington, 94 Fed. 885; The Majestic, 166 U. S. 375; The New England, 110 Fed. 415. (4) Matters bearing on the execution, interpretation and validity of a contract are to be determined by the law of the place where it was made. Hartman v. L. & N. Ry. Co., 29 Mo. App. 88; The Otis Co. v. Mo. Pac. Ry. Co., 112 Mo. 622. (5) Even though

a parcel or trunk be received by a carrier as the personal baggage of a passenger, yet, if it was not, in fact, personal baggage, but a package of merchandise, and this fact was known to the carrier, the carrier is not subject to the responsibilities incident to the loss of baggage. Hubbard v. Railroad, 112 Mo. 459; Rider v. Wabash Ry. Co., 14 Mo. App. 529.

ALLEN, J.—This is a suit to recover the value of certain personal property which, it is alleged, defendant, as a common carrier, undertook and agreed to safely transport, as baggage, and deliver to plaintiff, in consideration of the fare or passage money paid it for the transportation of plaintiff and her three minor children, together with plaintiff's baggage, from a point in Germany to St. Louis, Missouri. It is averred that the particular parcel of baggage in controversy was not delivered to plaintiff, but was lost. And it is alleged to have contained a large number of articles, worth in the aggregate $1129.35, which, with the alleged respective values thereof, are listed in an exhibit attached to the petition.

Defendant denied generally the allegations of the petition, and then set up and relied upon the terms and conditions of the "passage contract" issued to plaintiff for the transportation in question, which purported to limit defendant's liability for loss of baggage to $25.

It appears that, in May or June, 1910, plaintiff left Olevsk, Russia, with her three minor children, to go to the city of St. Louis, to which place her husband had previously removed and where he was then engaged in business. She testified that she had never travelled before; that the route she was to take had been pre-arranged, and that, two days before she left Olevsk, she forwarded, by express, her baggage to Antwerp, where she expected to take passage upon a vessel to

America. From Olevsk she and her children journeyed to Ottlotschin, Germany, the first station, it is said, beyond "the frontier." Plaintiff testified that, upon arriving at Ottlotschin, she endeavored to purchase a railway ticket to Antwerp, but was unable to obtain one; that defendant's agent at Ottlotschin told her that she must either purchase a ticket from the defendant, and travel to America by way of Hamburg, or return to Russia. She states that she told this agent that she had forwarded her baggage to Antwerp and insisted upon going by way of the latter place; and that she argued with the agent all day, finally consenting to procure transportation from defendant by way of Hamburg upon the agreement on the part of the agent that her baggage would be forwarded from Antwerp to St. Louis and would be "guaranteed." Plaintiff testified that she did not understand the German language, but that the agent conversed with her in Yiddish. She asserts that she told the agent what her baggage contained, and that it was worth three thousand rubles; and that the agent assured her that she would be paid full value therefor in case of loss. She testified that she had three parcels of baggage, one a basket containing certain edibles, another a package containing things which she had prepared to use on the journey, and the third a large bundle or bale containing the articles said to have been lost.

Plaintiff testified that she made a list of the contents of the bale alleged to have been lost, before leaving Russia. She says that she did not show this list to the agent at Ottlotschin, or to defendant's agent at Hamburg; but she asserts that she described the contents of the bale to both of these agents and told them that the property was worth three thousand rubles.

It appears that plaintiff paid defendant's agent at Ottlotschin a certain sum of money for the transportation of herself and her minor children from that

point to St. Louis, Missouri; that she received a railway ticket to Hamburg, and also a receipt entitling her to receive at Hamburg a passage contract for transportation over defendant's steamship line Hamburg to New York City and thence by rail to St. Louis. She thereupon proceeded to Hamburg, where, upon presentation of her receipt, she received from an agent of defendant the passage contract introduced in evidence by the defendant.

This passage contract is printed throughout in German, and one of its provisions, appearing upon the back thereof, as translated and used in evidence below, is as follows:

"The Hamburg-American Line . . . shall not be responsible in view hereof for any damaged or lost baggage in any case in the sum of more than 100 marks or $25. This lack of responsibility of the company in all cases for baggage which shall be shipped pursuant to this contract, is specifically recognized hereby by the undersigned passenger regardless of whether any loss or any damage shall be due to the fault of the company, one of its representatives or employees or through any other cause. Should a liability for more than 100 marks on the part of the company be desired, then the passenger must apply to the same for the issuance of a baggage receipt, in which the contents and value of the particular articles of baggage are expressly stated. The registration of these items or these statements will be entered at the request of the passenger, if he delivers to the company before shipment a certified inventory of his baggage together with a certified appraisement of the various articles. For articles of baggage shipped in this manner a certificate of insurance must be taken out in addition. The certificate of insurance includes insurance against damage and perils of the sea."

193 App. 5

Though, as appears above, the contract contemplated the signature of the passenger, it was not in fact signed by plaintiff. It is undisputed that plaintiff was unable to read the German language. There is no evidence in the record that she had any actual knowledge of the contents of the passage contract, and her testimony goes to show that she did not.

Defendant's agent at Ottlotschin denied that plaintiff was refused a railway ticket to Antwerp, and asserted that she requested transportation by way of Hamburg. He denied that he told plaintiff that she would be fully compensated for loss of any of her baggage; though he says that he told her that matters could be arranged so that she could get her baggage in Hamburg, and that if it should not arrive at Hamburg by the time of her departure his company would forward it to St. Louis.

Defendant's agent at Hamburg, who issued the passage contract, had no conversation with plaintiff. He testified that he issued the contract and "passed it on immediately to Emigrant Halls" from whom passengers receive their contracts; that this was "usually done two or three days before the departure of the steamer."

The trial, before the court and a jury, resulted in a verdict and judgment for plaintiff for the sum of $25, and she appeals.

The court, at defendant's request, gave the following instruction:

"The court instructs the jury that if the jury find and believe from the evidence that before embarking on her journey to St. Louis the plaintiff received from the defendant a passage contract or ticket containing certain provisions and conditions which were to govern the transportation by defendant of plaintiff and her three minor children and their baggage from Hamburg to St. Louis, and if you further find and believe that said

contract or ticket contained, among others, a provision that, in consideration of the free transportation of the baggage of plaintiff and her said minor children, within the limits of weight mentioned in said contract, the defendant should not be liable for such loss of or damage to such baggage in a sum in excess of twenty-five dollars ($25); and if you still further find and believe from the evidence that plaintiff received said ticket in time to inform herself of the contents thereof before the sailing of the vessel upon which she contemplated taking passage or actually knew of the contents of said contract or ticket, and accepted and retained and used the same for the purpose of her voyage from Hamburg to the city of New York, and thereafter to obtain transportation for herself and her children to the city of St. Louis, with the intention of becoming bound by the terms in said contract or ticket contained, then, even if you find for plaintiff under other instructions given you by the court, your finding must not be for any sum exceeding twenty-five dollars ($25), with interest thereon at the rate of six per cent per annum from May 18, 1911.''

Plaintiff, appellant here, insists that it was reversible error to give this instruction, in view of the evidence adduced. This assignment of error raises the main question involved in the appeal.

That the provisions of the passage contract whereby it was sought to limit defendant's liability in the premises to $25 are not binding on plaintiff under our law, in the circumstances of the case appearing from the evidence in the record, appears to be clear. There is no contention that we are to look to the foreign law, the law of the place where the contract was made, in passing upon this question; and what such foreign law is, upon the matter here in controversy, is not shown. We are therefore to apply the law of the forum applicable to such cases; and it is upon this

theory that the case has been briefed and argued before us. And thus adjudging the propriety of giving the instruction under consideration, we think it clear that the giving thereof constituted reversible error.

In the first place, there is no evidence whatsoever in the record tending to show plaintiff "actually knew of the contents of such contract or ticket," but all of the evidence adduced· is to the contrary. Neither is there any evidence of any probative force and value tending to show that plaintiff "received said ticket in time to inform herself of the contents thereof before the sailing of the vessel upon which she contemplated taking passage." There is no evidence showing when plaintiff actually received the passage contract, except such as shows that she, of course, received it before going upon defendant's vessel at Hamburg. This portion of the instruction is predicated upon the testimony of defendant's agent at Hamburg, who, after stating that passengers received their contracts from the employees of "Emigrant Halls," said: "This is usually done two or three days before the departure of the steamer." Manifestly this constituted no evidence as to when plaintiff actually obtained possession of this ticket or paper.

Under the circumstances there is no valid limitation upon the carrier's liability. The rule is that for a common carrier to thus limit its liability, the contract therefore must be one fairly and understandingly made with the passenger. It must appear that the passenger in some manner knowingly assented to the terms and conditions of the contract purporting to thus limit liability (Drey & Kahn Glass Co. v. Railroad, 156 Mo. App. 178, 136 S. W. 757; Engberman v. North German Lloyd S. S. Co., 84 N. Y. Supp. 201); or at least that the passenger accepted and used a ticket or contract of carriage containing such a limitation under such circumstances as to impute to him knowledge of its con-

tents and his assent to the terms and conditions thereof. [Aiken v. Railroad, 80 Mo. App. 8.] Numerous other authorities might be cited in support of this, but it is needless to refer to them here.

It is not disputed that plaintiff was wholly unable to read or understand the language in which the "passage contract" was written. She made her contract of carriage with defendant's agent at Ottlotschin, to whom she paid the consideration therefor; though this suit, it appears, is not bottomed upon such contract, as for a breach thereof, but upon the common-law liability of the carrier. It would seem therefore that she could not be bound by printed stipulations in a ticket or like instrument handed her at Hamburg in the absence of any agreement on her part to abide thereby, made when she contracted and parted with her money. And certainly she could not be held bound by terms of the "passage contract" purporting to limit defendant's liability, which instrument she did not sign, if she was unable to read the same, was not informed of the contents thereof, and had no knowledge concerning the matter.

Other points made by appellant need not be noticed. For the error in giving this instruction the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.